In re Estate of Ernest G. Wilson, Deceased.
Donald P. Wilson and Elizabeth Wilson Dees, Appellants, v. Mary Aldah Wilson, Executor of Estate of Ernest G. Wilson, Deceased, Appellee.

Gen. No. 10,279.

Opinion
filed November 12, 1948. Rehearing denied December 16, 1948. Released for publication December 17, 1948.

GOWER, GRAY & GOWER and DYER & DYER, all of Kankakee, for appellants.

FRED R. STITH, JR.; of Kankakee, guardian *ad litem*.

Eva L. Minor, of Kankakee, for appellee.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

This case presents the question of Mrs. Mary Aldah Wilson's right of ownership of the contents of two safe deposit boxes (numbered 371 and 1236) in the First Trust & Savings Bank of Kankakee, Illinois, and of a checking account in the same bank, as the survivor of her husband, Dr. Ernest G. Wilson, under written agreements made by Dr. Wilson, Mary Aldah Wilson and the bank, relative to the boxes and the checking account. In regard to box number 371 there is also to be considered a memorandum signed by Dr. Wilson and found in that box after his death.

Dr. Wilson died on September 25, 1946. Dr. Wilson, by his will, gave his net estate equally to Mary Aldah Wilson and his two children, Donald P. Wilson and Elizabeth Wilson Dees. There is no matter presented by the record on this appeal concerning the meaning of the will, or the effect of specific legacies, if any, made in the will.

Mary Aldah Wilson is the executrix of the will under appointment of the county court of Kankakee county. As such executrix, she has not included in the inventory filed in the estate of her husband, the contents of the safe deposit boxes, or the balance due from the bank at the time of Dr. Wilson's death. Donald P. Wilson and Elizabeth Wilson Dees are the stepchildren of Mary Aldah Wilson.

On October 3, 1947, Donald Wilson and Elizabeth Wilson Dees filed their verified petition in the county court of Kankakee county for a citation against the executrix to recover property of the estate and to discover information concerning the same under Article XV of the Probate Act [Ill. Rev. Stat. 1947, ch. 3, par. 335 et seq; Jones Ill. Rev. Stats. 110.432 et seq.].

The petition alleges that the executrix has failed to inventory and refused to account for $36,896 which was in the safe deposit box rented by Dr. Wilson in the First Trust & Savings Bank of Kankakee, and the contents of other safe deposit boxes, if any, and government bonds, the identity and details of which are not described and not known to the petitioners. The petition prays for an order requiring the executrix to appear before the court and answer interrogatories regarding property of Dr. Wilson not inventoried, and that she be ordered to account for, and inventory his estate, not accounted for.

The executrix answered the petition by stating that she did not have in her possession and control, and had not concealed, any assets of the estate which were not included in the inventory, or for which she had refused to account; that at the death of Dr. Wilson there was the amount of $36,896 in a safe deposit box in the First Trust & Savings Bank of Kankakee, which was rented by Dr. Wilson and Mary Aldah Wilson as joint tenants with the right of survivorship; that the money in said box was owned during the lifetime of Dr. Wilson and Mary Aldah Wilson as joint tenants; that upon the death of Dr. Wilson she became sole owner as surviving tenant of the contents of the box; that a second box rented in said bank by Dr. Wilson and Mary Aldah Wilson as joint tenants and not as tenants in common, contained three United States coupon bonds of the value of $500 each which were the joint property of Dr. Wilson and Mary Aldah Wilson; that she became the sole owner as surviving tenant of the bonds; that there were no other safe deposit boxes; that the only bank account of the decedent was a checking account in said bank in the names of Dr. Wilson and Mary Aldah Wilson as joint tenants, with the right of survivorship and, of which she became sole owner as the survivor of Dr. Wilson.

The county court appointed Fred R. Stith, Esq., guardian *ad litem* to appear and represent the estate. The petition was heard by the county judge without a jury. The court found that the three $500 government bonds payable to bearer found in the safe deposit box No. 1236 should have been inventoried as property of the estate; that the currency found in box No. 1236 and the checking account became the property of Mary Aldah Wilson, as surviving joint tenant on the death of Dr. Wilson.

On appeal to the circuit court it was stipulated by the parties that the evidence heard in the county court should be considered by the circuit court in determining the issues in the case. The circuit court found that the only property which the executrix failed to inventory, was the bank account of $1,035.41 in the checking account and ordered her to inventory the same as an asset of the estate. This appeal is prosecuted by the petitioners from that part of the order, which holds that all the currency in safe deposit box 371 and the bonds in box 1236 are the property of Mary Aldah Wilson. Mrs. Wilson has filed a cross-appeal from that part of the order directing her as executrix, to inventory the balance in the checking account. The guardian *ad litem* has filed brief and argument in this court.

At the time of the death of Dr. Wilson, there were two safe deposit boxes, numbers 371 and 1236 in the First Trust & Savings Bank of Kankakee rented under separate contracts with the bank and dated March 3, 1943. On each of the rental contracts, or leases, appeared stamped thereon the following:—"as joint tenants with the right of survivorship and not as tenants in common." The renters also agreed to comply with all the rules and regulations of the bank governing safe deposit boxes. Both cards were signed by Ernest G. Wilson and Mary Aldah Wilson.

After the death of Dr. Wilson, box No. 371 contained $36,896 in currency, in bundles. On the top of the currency there was a memorandum written on the face of an envelope which is as follows: "There is $37,000.00 in this box and it is a joint tenancy between my wife, Mary Aldah Wilson, and myself. 6–11–46. (Signature) E. G. Wilson."

Box No. 1236, in addition to some United States "E" bonds and two deeds, contained three $500 United States coupon bonds. At the time of Dr. Wilson's death there was a checking account in said bank with a balance on the bank's records as of the date of his death to the amount of $1,837.52. Checks to the amount of $802.11 signed by Dr. Wilson were honored by the bank after his death. Mary Aldah Wilson withdrew the balance of the checking account of $1,035.41 on October 9, 1946. The signature card covering the checking account is as follows:

"Joint Account."

"First Trust & Savings Bank, Kankakee, Illinois, is hereby authorized to recognize either of the signatures below in the payment of funds or transaction of any other business. Either one or both or the survivor to sign checks. The signature of either one to be sufficient for the withdrawal of all, 'or any part of the funds standing to the credit of the above account." Stamped on the signature card appears the following: "as joint tenants with the right of survivorship and not as tenants in common." The card bears the signatures of Mrs. E. G. Wilson and E. G. Wilson.

The record shows that during the period from April 1943 to March 1, 1947, Dr. Wilson and Mary Aldah Wilson opened the boxes, sometimes Dr. Wilson and sometimes Mary Aldah Wilson, twenty-two or twenty-three times. They both signed a receipt for the keys to the boxes when the boxes were rented.

The bank ledger covering the checking account for a number of years before Dr. Wilson's death was headed:—"Dr. Wilson or Mrs. E. G. Wilson or Donald." The evidence shows that Donald P. Wilson's name was added to the ledger sheet while he was in college in order that he might draw checks against the account. This was done at the direction of Dr. Wilson, and Donald drew numerous checks on the account while he was in college. After he graduated from college the ledger sheet was not changed and Donald had the right to draw checks on the account, but did not do so.

It is not disputed that all the currency in box 371 was earned by and belonged to Dr. Wilson before it was placed in the box, or that all the money used to purchase the three Government bonds in box 1236, and all the money in the checking account, came from Dr. Wilson's income.

It is contended on behalf of Mary Aldah Wilson that she and her husband, during his lifetime were the joint tenants, with the right of survivorship, of the checking account and the chattels in the safe deposit boxes. It is not contended that there was a gift of the personal property in question by Dr. Wilson to Mrs. Wilson.

It is urged by counsel for Mrs. Wilson that a proper construction of the two rental agreements made with the bank relative to the safe deposit boxes depends upon the intention of Dr. Wilson which is to be ascertained from evidence in the record of oral statements made by Dr. Wilson.

Mary Aldah Wilson testified in her own behalf over the objection of the petitioners that she was an incompetent witness to testify as to any communication or admission made by Dr. Wilson to her, or to any conversation between them during coverture. This point is not assigned by the petitioners as an error relied on for reversal of the order appealed

from; nor is the point mentioned in the brief and argument of the petitioners. Rule 39 of this court provides that no alleged error or point not contained in the brief of the appellant shall be raised afterwards, either by reply brief or in oral argument or printed argument, or on petition for rehearing. Under the rule this point is considered as waived by the petitioners. (*People ex rel. Campbell v. Kapp,* 295 Ill. App. 92; *Cottrell v. Gerson,* 296 Ill. App. 412.)

Mary Aldah Wilson testified, relative to the renting of the boxes and the contents thereof, as follows: ''I went to the First Trust & Savings Bank with my husband and Louis E. Beckman, Sr., was there waiting for us. I signed those cards. Doctor told me in case anything happened to him he had arranged for the contents of the boxes to be mine. I do not recall anything that was said after that at the bank. I entered both boxes from time to time after that. On different occasions I took something out. I was present when the memorandum was taken out of the box which had the currency in it. I believe we went to the bank on the 6th day of March, the date that is on the card. I had never seen the memorandum until the box had been opened at the bank. There had been another note there. The first time I saw it was on the day it was removed from the box by Mr. Taylor. Dr. Wilson and I returned from Florida on April 22, 1946, on the Sunday before Easter. The last time I was in the box was the following Monday. Donald was at the house with his father. I was taking him, (her husband,) to the hospital and I got $1500.00 to pay on the note to cover the expenses of his operation. That was the last time to my knowledge that I was in the box.''

It appears from the evidence that Mr. Taylor, cashier of the bank, was the representative of the attorney general to inventory the contents of the boxes for inheritance tax purposes. After the death of Dr. Wilson, the memorandum was taken out of the box, but

later replaced there. The evidence is conclusive, however, that the memorandum was found on the top of the currency when the contents of the box were first examined by Mr. Taylor. It also appears from the record that Louis E. Beckman, Sr., was the president of the bank at the time the rental cards for the safe deposit boxes were prepared.

Two other witnesses were called by Mary Aldah Wilson to prove that it was the intention of Dr. Wilson that Mrs. Wilson should be the owner of the contents of the boxes after his death. Vernon G. Butz, an attorney, testified substantially as follows: The best that I can recall, it was on July 4, 1946, at the country club, that I had a talk with Dr. Wilson on the subject of taxes and how taxes were assessed. He made the statement that Louis Beckman had helped him fix things at the bank, that if anything happened to him his wife would be taken care of. I did not represent Dr. Wilson as his attorney.

Edwin S. Hamilton, a physician, testified to the following effect. I knew Dr. Wilson for twenty-five years. He and I were spending a little time in Miami during the winter of 1946. Dr. Wilson was not in very good health, having some pain in his back; and he was confined to his room in the hotel. In March 1946, we were having a conversation and our talk came around to our personal affairs. We were discussing what arrangements we had made in the event that something happened rather suddenly. Dr. Wilson said that he had thought of that very seriously. He said in substance that he had made arrangements whereby his wife would be taken care of until such time as she could readjust her life. He said, ''Very often I have put away in the bank box in the First Trust & Savings Bank an amount of money.'' I recall, he said, ''In an envelope with her name on it, which will take care of her for quite a length of time until she readjusts her

life.'' He did not say the amount of money, but he gave me to understand it was a considerable amount in the box with the name on the envelope to be used and kept by her. That is my recollection.

██ We are confined to the construction of the agreements made with the bank by Dr. Wilson and Mrs. Wilson and the force and effect of the memorandum found in box 371 after the death of Dr. Wilson. If Mary Aldah Wilson has title, as the survivor of her husband, to the contents of both, or either one of the safe deposit boxes or to the checking account, its source must be found in the agreements and the memorandum. (Sec. 2 of the Joint Rights and Obligations Act [Ill. Rev. Stat. 1947, ch. 76, par. 2; Jones Ill. Stats. Ann. 70.03]; *Mustain v. Gardner,* 203 Ill. 284; *Deslauriers v. Senesac,* 331 Ill. 437; *Reder v. Reder,* 312 Ill. 209; *Illinois Trust & Savings Bank v. VanVlack,* 310 Ill. 185; *In re Brown,* 86 Misc. 187, 149 N. Y. S. 138, affirmed without opinion in 217 N. Y. 621, 111 N. E. 1085.)

In the case of *In re Brown,* 86 Misc. 187, 149 N. Y. S. 138, the court was called upon to construe a lease of a safe deposit box which was signed by husband and wife, James L. Brown and Mary E. Brown, and read as follows: ''We agree to hire and hold safe Box No. —— as joint tenants, the survivor or survivors to have access thereto in case of the death of either; but either to have power to appoint a deputy.'' Upon the death of James L. Brown, his widow, Mary E. Brown, claimed the contents of the box. The court in that case says: ''The administratrix, (Mrs. Mary E. Brown,) cannot be awarded the property unless her right thereto can be found in the written contract. While the relation of the parties, the declarations of the husband, the history and nature of the deposits, and all the qualifying circumstances are important, if found material, to explain and characterize the writ-

ing, they cannot be the source of her claim. It is not conceivable that one may by parol make a chattel owned by him the subject of a voluntary disposition to take effect on his death, unless he conforms to the law of gifts or the law of wills.

"Securities or other instruments for the payment of money are chattels, however valuable they may be beyond their visible and ponderable quality. Securities, no less than coin, being incapable of gift without delivery, any arrangement for their disposition upon the death of the owner, which is not evidenced by will, delivery, or some form of written convention, must fail. In the cases of bank deposits and investments, there has always been a written evidence of the chose in action and not the concrete money deposited or invested which has been made the subject of survivorship, and then only upon the written evidence in the form of the deposit or investment, not merely that the husband wanted the wife to take the fund but that she was by him made the payee in case of her survivorship. No benevolence of the husband, however intense, in feeling or vociferous in expression, will be of legal value if the wife is not legally given the potential right of disposition in case of his death."

The instruments in writing to be construed in the present case, according to their terms or language, on the question if they create a joint tenancy with the right of survivorship in the contents of the safe deposit boxes numbered 371 and 1236, are the rental agreements, or leases, of the boxes made with the bank by Dr. Wilson and Mary Aldah Wilson and the memorandum found in box 371 after the death of Dr. Wilson. As will hereafter appear, the agreement of Dr. Wilson relative to the checking account is governed by a principle not involving the question of joint tenancy.

Section 2 of the Joint Rights and Obligations Act provides, in part, as follows:—"Except as to executors and trustees, and except also whereby will or other

instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall,. in all intents and purposes, be deemed tenancies in common.''

In the cases which we have found, wherein the courts confined their construction of leases of safe deposit boxes to the terms of the lease, and the boxes were rented jointly or in joint tenancy, without further agreement of the renters as to the contents of the boxes, it has been held that such leases do not create a joint tenancy in the contents of the boxes.

In the case of *Black v. Black,* 199 Ark. 609, 135 S. W. (2d) 837, the Supreme Court of Arkansas construed the following provision of a lease of a safe deposit box which was signed by husband and wife. ''In case the lessees are joint tenants, including husband and wife, it is hereby declared that all property of any kind at any time heretofore or hereafter placed in said box is the joint property of both lessees and, upon the death of either, passes to the survivor subject to inheritance tax laws. Each of the lessees shall have full access to and the control of the contents of said box without further authority. The lessor shall not be liable, in the event that property belonging to the joint tenants having access to said box be misappropriated by one or more of those having access. Each or all of the lessees may appoint a deputy to have access to or surrender the box.'' The renters of the box were W. G. Black and Ida B. Black.

Ida B. Black survived her husband, W. G. Black, and at the time of his death there was $3,790 in cash in the box so rented by Mr. and Mrs. Black. The stepson and the stepdaughter of Mrs. Black filed a suit in chancery praying that Mrs. Black be restrained from wasting or using the money, and an order was made

by the chancery court requiring Mrs. Black to deposit in the registry of the court the $3,790 found in the box. Mrs. Black in her cross complaint asserted ownership to the money as a surviving tenant by the entirety. From a decree dismissing her cross complaint Mrs. Black appealed to the Supreme Court of Arkansas.

In the *Black* case the Supreme Court held:—"Appellant insists that the recital contained in the contract of lease of the box, hereinabove quoted, is conclusive of the common ownership of the contents of the box, but we do not think this was the purpose or the effect of that provision of the lease. Its obvious purpose was to protect the lessor, who could not know what money or things of value would be placed in the box, nor by which one of its tenants; nor would it know by which of the tenants withdrawals were made. The lessees were, therefore, declared and agreed to be, as between themselves and the lessor, joint tenants of the box and owners of its contents, so that it became and was unimportant, so far as the lessor was concerned, which tenant made deposits or withdrawals. Each tenant was given the right to deposit objects in the box and to remove them, and the lease contract has no relation to, or bearing upon, the question of the ownership as between the tenants themselves."

In the *Black* case there is cited the case of *In re Estate of Alphonse Wohleber,* deceased, 320 Pa. 83, 181 Atl. 479, appearing in 101 A. L. R. 829. In the *Wohleber* case the Supreme Court of Pennsylvania held as follows:—"The fact that a safe deposit box was leased in the names of both the husband and the wife, either or the survivor of them, is not sufficient to establish a tenancy by the entireties, with the right of survivorship, of securities found therein after the death of the husband, where there is evidence to show that the securities were in fact owned by the husband."

The following quotation is taken from the *Black* case. ''The annotator's note upon this and other cases which the author cites is: 'As against the contention that the taking of a safe deposit box in the name of one ''or'' another made the parties joint tenants, equally entitled to the property contained therein, and that upon the death of one the title vested in the other, the court in *Mercantile Safe-Deposit Co. v. Huntington,* 1895, 89 Hun. 465, 35 N. Y. S. 390, said that all that could be deduced from the way in which the box was rented was that it was the intention of the parties that either might qualify himself to have access to the safe; that it did not, by any means, determine the ownership of the contents of the safe, or justify a conclusion that there was a joint ownership in the property contained therein, with a right of survivorship. The Court concludes: ''We think it would be a proposition which would somewhat astonish the renters of boxes in safe deposit companies if it should be held that, when two combine to rent a safe, the presumption would be that there was a joint ownership in all the property contained therein, even though the names of the renters were disjunctively associated.'' This decision was cited in *Gilkinson v. Third Ave. R. Co.,* 1900, 47 App. Div. 472, 63 N. Y. S. 792, as holding that the joint ownership of a box indicates nothing as to the ownership of the contents, and that all that could be inferred from the fact of ownership was ''the intention of the parties that either might qualify herself to have access to the box.'' And see *Re Brown,* 1914, 86 Misc. 187, 149 N. Y. S. 138 affirmed without opinion in 1915, 167 App. Div. 912, 151 N. Y. S. 1106, which is affirmed without opinion in 1916, 217 N. Y. 621, 111 N. E. 1085, is to the same effect, the court refusing to recognize any right of survivorship of the wife in securities that belonged to her husband, when they were put into the box held by them as joint tenants with right of access in each in case of the death of either.' ''

The intention and purpose of a person renting a safe deposit box in a bank or safe deposit company is the safekeeping of chattels placed in the box. If there are joint or several owners of the property when it is placed in the box, it is usual for the owners to designate their interests in the property by some definite means placed so that there will be no confusion or misunderstanding as to the ownership of the contents of the box. It is not usually considered by renters that because they may be joint tenants of a box that they also by reason of the renting, or leasing, of the box jointly are owners of the contents of the box.

It is not a means to be sanctioned, under the Joint Rights and Obligations Act, that the terms or form of a rental agreement of a safe deposit box with a bank, which is to all intents and purposes an arrangement with the bank for its protection, as to which persons shall have access to the box is considered, or should be considered, as a means of transferring ownership or title to the contents of the box in joint tenancy with the right of survivorship, unless the rental agreement contains terms which express an intention on the part of the renters, or lessees, that the contents of the box are owned in joint tenancy by them with the right of survivorship.

Our Supreme Court in the case of *Deslauriers v. Senesac*, 331 Ill. 437, in discussing the law relative to joint tenancy states how a joint tenancy must be created, and in the opinion, we find the following: "The properties of a joint estate are derived from its unity, which is fourfold: the unity of interest, the unity of title, the unity of time and the unity of possession; or, in other words, joint tenants have one and the same interest, accruing by one and the same conveyance, commencing at one and the same time and held by one and the same undivided possession."

In the case of *Neal v. Neal*, 194 Ark. 226, 106 S. W. (2d) 595, the question arose as to the ownership of a

certificate of deposit, and the Supreme Court of Arkansas, in passing upon this question used practically the identical language used by our Supreme Court in *Deslauriers v. Senesac, supra,* in describing how a joint tenancy must be created, and then states: ''If any one of these elements is lacking, the estate will not be one in joint tenancy. Hence, where two or more persons acquire an individual interest in property at different times or by different conveyances, the estate created is not joint tenancy, for the unity of time or the unity of conveyance would be disregarded were this to be called a joint tenancy. Under the facts in this case it will readily be seen that there was no joint tenancy, as defined above. It appears to us to be more in the nature of a gift to take effect in the future, or on the death of the donor, which is void.''

Under the rule, as announced by our own Supreme Court, and as shown by the Arkansas case, a joint tenancy in personal property, must be created in the same manner as a joint tenancy in real estate, and under the facts and circumstances, as disclosed by the record in this case, any attempt to create a joint tenancy, has wholly failed. It is our conclusion that money in the safe deposit box No. 371, and the three $500 bonds in safe deposit box No. 1236, were the property of the estate of Dr. Wilson and it should have been inventoried as such by the executor of the estate.

In regard to the deposit in the checking account, as before stated, a different rule applies. In the case of *Illinois Trust & Savings Bank v. VanVlack,* 310 Ill. 185, our Supreme Court was discussing the law relative to a joint deposit of husband and wife, and the contract in question was nearly identical with the one now before us. In the opinion, we find the following: ''In the case of *Chippendale v. North Adams Savings Bank,* 222 Mass. 499, cited in *Erwin v. Felter* [283 Ill. 36], *supra,* (a case of a deposit payable to either of two persons or the survivor,) the court said: 'The

new deposit in the Hoosac Savings Bank by its terms was a deposit to be paid during the lives of Williams and of Mrs. Worthington or either of them, as they should call for the deposit or a part of it, and the balance not withdrawn during their joint lives was to be paid to the survivor of them. Such a contract between a depositor or depositors and the savings bank is a valid contract. If Mr. Williams had gone to the savings bank with a sum of money he could have made such a contract with the savings bank. What took place was the equivalent of that, by reason of a novation with respect to the account theretofore on deposit in Williams' name alone. The case, therefore, which we have to decide is not a case of an attempted gift of property, but is a case where Williams, the depositor, through a novation had made a new contract with the savings bank, by virtue of which either he or Mrs. Worthington could draw such sums as either, in their discretion, chose during their joint lives, and the balance was to be withdrawn by and so was to belong to the survivor. In such a case there is no gift of the balance upon the death of Williams. Mrs. Worthington (when she survived Williams) became the owner of the balance undrawn by virtue of the contract of deposit, and not by virtue of a gift which took effect on Williams' death.'

"Besides the cases cited in *Erwin v. Felter, supra,* as to the right arising from contract, others to the same effect are *Wisner v. Wisner,* 82 W. Va. 9, and *New Jersey Title Guarantee & Trust Co. v. Archibald,* 91 N. J. Eq. 82. In the latter case the court said: 'Whether the deposit in the case at bar created a technical joint tenancy is beside the mark. We have pointed out that it was a deposit of money originally belonging either wholly to the mother or in part to her and in part to the daughter. More strictly speaking, it was a loan by the depositors to the banks upon the terms stated, since a deposit in a bank creates the re-

lation of debtor and creditor between the depositor and the bank. . . . It is argued that there was no gift from the donor to the donee because there was no delivery. But we think that is not so. The right was contractual and was vested in both depositors jointly, and the survivor. The contract entered into by the bank with the mother and her daughter exhibited a donative purpose from donor to donee, (not one merely for use and convenience of the donor,) and hence constituted a valid gift.' '' To the same effect is *Reder v. Reder*, 312 Ill. 209.

 Under the circumstances in this case, it is our conclusion that the deposit account of $1,035 and 41/100 dollars, is not controlled by the rules governing joint tenancy, or tenancy in common, but is governed by rules of contract between the bank and Doctor and Mrs. Wilson. At the death of Doctor Wilson, the remainder of the deposit became the property of Mrs. Wilson, and she should not be held to inventory this account.

The judgment of the trial court is hereby reversed and remanded with directions for the court to enter an order in compliance with the views as expressed in this opinion.

*Reversed and remanded with directions.*