George A. David, Appellee, v. Ridgely-Farmers Safe Deposit Company et al., Defendants. John B. Kennedy, Administrator of Estate of Mary Kennedy, Deceased, Appellant.

Gen. No. 9,709.

Opinion filed November 2, 1950. Rehearing denied December 28, 1950. Released for publication December 28, 1950.

PREE & PREE, of Springfield, for appellant.

JAMES D. TEMPLEMAN, of Springfield, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

Defendant, John B. Kennedy, as administrator of the estate of Mary Kennedy, deceased, appeals from that part of a decree of the circuit court of Sangamon county, finding that said Mary Kennedy had no interest in or title to $12,325 in currency contained in a certain safety deposit box rented by Ridgely Farmer's Safe Deposit Co., of Springfield, as lessor, and ordering that said depositary turn over one-half of said currency to George A. David, plaintiff appellee, and the other one-half thereof to said George A. David, as executor of the last will and testament of his deceased wife, Sarah David.

The original complaint at law alleged that said depositary refused to deliver certain personal property including currency in the amount of $12,325 contained in one of its safety deposit boxes which was rented in the name of Sally Kennedy, the maiden name of plaintiff's wife, Sarah David, who died November 15, 1947, and that said property was and is plaintiff's, having been taken from his business and from sales of his property and turned over to his wife for safekeeping and for her comfort and enjoyment, to be held by her until needed and called for by plaintiff. By amendment to the complaint it was alleged that defendant, Mary Kennedy, plaintiff's deceased wife's mother, claimed some interest in the property in ques-

99

tion under the terms of the joint deposit box agreement signed by her and plaintiff's wife at the time the box was rented in 1944, but that her claim is subordinate to plaintiff's. The depositary interpleaded, disclaiming any interest in the property in question, except its claim for box rental and the cause, by stipulation, was dismissed as to it.

Plaintiff's motion for leave to file an additional count in equity as Count II was allowed over defendant's objection, the record showing that Count II was found by the court "to be similar in nature to the original complaint at law." No part of Count II itself, however, appears either in the record or the abstract and nothing further discloses its contents except what can be gained from defendant's answer thereto, which denies that the property in question belonged to plaintiff and alleges it to be the sole property of defendant. The answer further alleges that the property in question was jointly owned by defendant and plaintiff's wife at the time it was placed in the safety deposit box and alleges that the box was rented by them in their joint names in accordance with the terms of a certain rental agreement relied upon to establish joint ownership with right of survivorship between them, and further denies that any of the property in question was placed in the safety deposit box by defendant or that it was not claimed or controlled by her during the lifetime of plaintiff's wife. Plaintiff's reply denied the affirmative allegations of the answer and the matter was referred to the master in chancery to take testimony as to the issues made thereby. Thereafter, Count I, being the amended complaint at law, was dismissed on plaintiff's motion.

Some time after the hearing before the master had begun pursuant to the reference of Count II, defendant moved the court to set aside the reference to the master and her motion was allowed, as was her ex parte motion

to strike ''that portion of Count II with reference to mutual wills'' made by plaintiff and his deceased wife. The court thereupon re-referred the cause to the master ''on the sole issue as to plaintiff's ownership of the property in question under Count II and also whether said property is impressed with a trust as alleged in Count II.''

Plaintiff thereupon moved for leave to file an amended Count II and a new Count III, both in equity, a copy of each being attached to plaintiff's motion for leave to file. Amended Count II alleged that since the filing of the original complaint the will of plaintiff's wife has been found and admitted to probate and that said will was executed along with a similar will of plaintiff's pursuant to an agreement between plaintiff and his wife for the mutual protection of both of them and for the protection of plaintiff as to any part of his property placed in his wife's custody. Count III, styled ''an alternative to amended Count II,'' alleged that plaintiff's wife had received the property in question from plaintiff to place in the safety deposit box, but that the property was and is plaintiff's having been taken by him from his business and from sales of other property and turned over to his wife for safe-keeping and to be held by her until needed and called for by him, that plaintiff, at various times, placed funds and property in his wife's hands for her to place in the safety deposit box for safekeeping and on various occasions sent her to withdraw funds and property from the box when needed in his business, and that in addition to the funds in question the plaintiff gave his wife sufficient funds for her well being, comfort and support. Count III further alleged that defendant has claimed the currency in the safety deposit box as her own, although none of it was placed there by her and was not claimed or controlled by her during the lifetime of plaintiff's wife; that the

plaintiff's wife was, with respect to the property in question, trustee for the benefit of plaintiff and that the deposit box agreement, if valid, was in violation of the trust imposed upon plaintiff's wife with respect to the assets in question and is of no force and effect and is a fraud upon the rights of plaintiff.

The two counts alleged in common the marriage of plaintiff and wife in October 1935, that they lived together as husband and wife until her death in 1947, that after her marriage she at no time engaged in any business or employment but was supported by plaintiff, that she at no time possessed any real or personal property as her sole and separate property; that upon her death certain listed personal property was found in the safety deposit box in question, $12,325 in cash being included therein, and that defendant claims said assets by virtue of the joint deposit box agreement which is set out in full. It is further alleged in both counts that the agreement is insufficient in law to transfer the ownership and possession of the assets which were in the possession of plaintiff's wife during her lifetime to her mother, the defendant.

Plaintiff further moved that the court, upon allowing the amendment of the complaint by the filing of the foregoing counts, re-refer the cause to the master on the issues made therein. The record and abstract show only that this motion was taken under advisement, that Count III was filed and that the court ordered that "said Count III with reference to the trust now before the Master be made a part of the pleadings in this case." There is nothing whatever in the record to indicate that answer of any kind was made to Count II as amended or to Count III, the only answer filed by defendant having been directed to the original Count II which, as noted above, is not shown in either the record or the abstract. No criticism of the condition of the record is made by either party.

Nevertheless, the master proceeded to hear the testimony of numerous witnesses on two principal issues, namely, "the title to certain cash in a joint safety deposit box and the effect of the agreement relating to such safety deposit box."

The essential facts found to have been established by the court in its decree, which approved the master's report and findings, are as follows:

Plaintiff and his wife were married October 10, 1935, and to the date of her death on November 14, 1947, both worked in a business known as Rose's Eat Shop, which in various locations was owned by them and managed by plaintiff. During said period they accumulated the $12,325 in currency in question, which represents, either directly or indirectly, the profits of said business in which both were interested, said sum being all the cash possessed by plaintiff and his wife at the time of her death. The court further found that during their married life, plaintiff turned over to his wife to hold and keep for him all the profits of the business and that at various times plaintiff used a part of this fund in the business and for other investment and retained control thereof in his wife's hands, she at all times holding the funds for him and subject to his order, and that plaintiff and his wife each beneficially owned one-half of the currency in question located in the safety deposit box.

It was further found that this box was rented on April 28, 1944, by plaintiff's wife and her mother, the defendant, and that the latter was never at the box, did not know its location, and owned none of the contents thereof, plaintiff's wife having continually opened the box and controlled the contents thereof during her lifetime.

The court also found that the deposit box agreement, hereinafter set forth, executed by plaintiff's wife and defendant, did not create a joint tenancy in them with

103

respect to the contents of the box, that no title or ownership therein passed to defendant as the survivor of the two lessees, and that defendant has no interest in or title to any of the assets contained in the safety deposit box.

The court concluded that the currency in question is the property of the plaintiff and his deceased wife in equal shares and ordered it turned over and delivered accordingly, as above indicated. During the proceedings, Mary Kennedy (the mother) died, her death was suggested, and her administrator substituted as a party to the suit.

Defendant's principal arguments are that the court erred in finding that the joint deposit box agreement did not create a joint tenancy in the property contained therein between defendant and plaintiff's deceased wife, or in the alternative a tenancy in common between them, and that the findings of the master in his report, and the court in its decree, are contrary to the law and evidence.

In support of the latter contention, defendant urges that the following vital facts were established and either misconstrued or entirely overlooked by the master and the court. It is said that the money in question was not in plaintiff's physical possession nor was it available to him, he never having had, over a three and a half year period, a key to the safety deposit box where it was located, or access to it, and further he did not, in fact, know of the existence of the safety deposit box where the money was kept. Defendant claims these facts are established by plaintiff's testimony alone and are corroborated by other testimony on defendant's behalf from which it follows that plaintiff knew nothing of the existence of the box *and its contents* until after his wife's death and that the money in the box was not, in fact, his.

Defendant contends these conclusions are substantiated by testimony of plaintiff's deceased wife's sis-

ters, who stated that when they came, at plaintiff's request, sometime after his wife's death, to get her clothing, plaintiff refused to turn it over to them saying that the clothing would be held until after he found out "about this and he said what made him so mad was that when he asked if there was any money around or who knew if there was any money, we all said no, and he said now this shows up," referring to the assets found in the safety deposit box. These witnesses further testified that when they assured plaintiff that they knew nothing about the box and its contents, he replied, "I believe that, I didn't either, but it has turned up."

Attention is also called to testimony of defendant's son that sometime after the funeral of Sarah David, plaintiff came to defendant's house and told her he was going to take the house away from her if she didn't give him something, and to testimony that upon an earlier occasion plaintiff came to defendant's house seeking information as to the location of $300, which he believed his wife had on hand. Defendant further argues that plaintiff's wife took the safety deposit box in her maiden name because she and plaintiff had not lived together for five to six years prior to her death, which it is contended lends credence to the fact that the money in question belonged to plaintiff's wife and that she did not want plaintiff to take it under her will.

Defendant argues that it must be concluded from this testimony that the currency in question belonged to plaintiff's wife, and not to plaintiff, and represented her share of the profits of the business in which the court found she had only a half-interest.

This court cannot agree that this testimony leads to such conclusion, even if it is assumed that the preponderance of the testimony shows that plaintiff did not know of the existence of the deposit box until after his wife's death, and it is not entirely clear that

the testimony does so show. This assumption does not contradict plaintiff's statement that he knew that his wife had substantial sums of money in safekeeping which he had turned over to her as profits from the business and various real estate transactions, that she was the banker in the family, and that these funds had been turned over to her for safekeeping only. Plaintiff further testified that his wife had shown the key to the safety deposit box to him during her lifetime and had told him that the funds which they were accumulating were in safekeeping in the box, although she did not tell him, and he apparently did not know, where the box was. Defendant's argument appears to be that as plaintiff did not have knowledge of the particular box which his wife rented, he necessarily did not have knowledge of the contents thereof from which it follows that he had no rights or ownership therein. This conclusion is by no means inevitable and the premises upon which it is based are far from certain. Plaintiff's complete lack of knowledge of the *location* of assets turned over to his wife, assuming it to have been established, is not inconsistent with his testimony that he knew the approximate amount turned over to his wife, nor with his claim that the property belonged to him both before and after delivery to her, nor is it inconsistent with the findings of the court that he had and retained one-half ownership therein. From a factual standpoint, the evidence is sufficient to substantially support the material findings in the decree.

The deposit box agreement which defendant contends establishes a joint tenancy between herself and plaintiff's deceased wife as to the property contained in the box is as follows:

"Joint Deposit Box Agreement

Safety Deposit Box Number 1944

To Ridgely Farmers Safe Deposit Co. Springfield, Illinois:

106

In consideration of the above named company renting or continuing to rent to us a safety deposit box, it is mutually agreed by us that all moneys, securities, valuables, papers and other property now on deposit, or at any time deposited by us, or either of us, with said Company in the above numbered safety deposit box or otherwise left or deposited with said Company, are and shall be so deposited by us and received by said Company upon the following terms and conditions of delivery, viz:

That any and all of said property and any and all of the contents of said box, or other deposit with said Company, may be delivered by said Company to either or any of us or to the survivor or survivors of us, or to the executors, administrators, or assigns of such survivor, or upon written order of any person so entitled to such delivery and without reference to the original ownership of the property so deposited.

In case of the death of either, any or all of the undersigned, further delivery shall at the option of said Company be conditioned upon the production of evidence that all inheritance and estate taxes—if any there be assessible—have been paid and that all other provisions of law in such case provided have been fulfilled.

Sally Kennedy<br>Mary Kennedy"

The leading case in this State concerning the creation of a joint tenancy in personal property is *In re Estate of Wilson,* 404 Ill. 207. In that case Doctor and Mrs. Wilson rented two safety deposit boxes and in connection with the rental thereof, signed a printed lease agreement on which was stamped, "as joint tenants with the right of survivorship and not as tenants in common." After Dr. Wilson's death, Mrs. Wilson claimed, as surviving joint tenant, $37,000 in currency which was found in one of the boxes together with a paper on which there appeared in the doctor's hand-

writing, "there is $37,000.00 in this box and it is a joint tenancy between my wife . . . and myself. (signed) E. G. Wilson, M. D." While it was held that a joint tenancy in the contents of the box was not established by either the lease agreement or the writing signed by Doctor Wilson, defendant contends that the agreement in the instant case is materially different from that in the *Wilson* case and that it meets the requirements stated by the Supreme Court to be necessary to establish a joint tenancy in the contents of a safety deposit box.

A careful analysis of the *Wilson* decision is necessary to discover the meaning and extent of the rules laid down therein with relation to the facts in the instant case. It was the court's opinion that joint tenancies in personal property are governed by section 2 of the Joint Rights and Obligations Act (Ill. Rev. Stat. 1949, ch. 76, par. 2 [Jones Ill. Stats. Ann. 70.03]), the provisions thereof applicable to the property in the deposit box being as follows:

"Except as to executors and trustees, and except also whereby will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common."

██ The court found that while this statute authorizes personal property to be held in joint tenancy with the right of survivorship in the special instances enumerated therein, such property may be so held only as an exception to the general provision of the statute which clearly and unequivocally abolishes survivorship, except in certain enumerated cases, the burden being on the person claiming personal property as

surviving joint tenant to show that he comes within one of the exceptions permitted. It was held that even if it is conceded that the rental contract in the *Wilson* case indicates an intention that something was to be taken by the survivor, neither the contract nor Dr. Wilson's handwritten statement is such a written instrument as the statute requires, because the former does not purport to convey anything and leaves the subject matter to conjecture, while the latter neither expressly provides that the currency therein described is subject to the right of survivorship nor purports to be a transfer in and by itself.

 In its discussion of the law leading to this conclusion the court found that the foregoing statute requires the following conditions to be met in order to establish a joint tenancy with right of survivorship in personal property, and except as the statute makes specific provisions governing certain other cases, the requirements are the same whether the property in question is located in a safety deposit box or elsewhere. These requirements are: (1) such an interest can be created only by means of a written instrument; (2) the instrument must express an intention to create a joint tenancy in personal property, and apparently must expressly provide that the property so held is to be subject to the right of survivorship between the owners thereof; (3) the instrument should comply with the general requirements of a will as to definiteness of description of: (a) subject matter; (b) parties; (c) certainty of its object. With respect to certainty, the court further states that if the subject matter of the joint tenancy is currency or money the amount must be specified in the instrument at the time title passes to the joint tenants. It appears that the instrument may be, in form, a contract, transfer, conveyance, or such other form as is ordinarily used to transfer title to goods and chattels without valuable consideration.

There appears to be implicit in the court's decision the conclusion that the foregoing provision of the statute is not remedial, that is, it does not provide a new or simplified method for the creation of a joint tenancy with right of survivorship in personal property, nor does it relax or in any way modify the common-law requirements for creation of such an interest, but rather reaffirms them in all respects. It is important to note in this connection that even though the statute does not expressly so provide, it was held that the instrument relied upon to create the joint tenancy, must not only satisfy the conditions noted above, but must also convey or transfer the title to the subject matter to the persons who are intended to be the joint tenants. Although the court found irrelevant, in the circumstances before it, the question whether the unities of time, title, interest and possession must exist, because no transfer of title had taken place, it seems reasonably clear from the decision as a whole that the existence of these traditional unities is essential. In fact, it appears that the same conditions are necessary to create a joint tenancy in personal property as are required in the creation of that estate in real property with the added condition that the instrument conveying title in personal property in joint tenants must specifically provide that they are to enjoy the right of survivorship.

██ ██ It seems abundantly clear that the agreement relied upon by defendant in the instant case does not meet the required conditions noted above to establish a joint tenancy in the currency in the box which was rented in her name and that of plaintiff's deceased wife. While the agreement is in writing, is styled a "joint deposit box agreement," and provides that the depositary "may" deliver the box contents to either renter or the "survivor," there is no clearly expressed intention to create a joint tenancy in the

parties nor to vest them with the right of survivorship. Furthermore there is no sufficient description of the property to be held in joint tenancy, particularly in view of the requirement stated in the *Wilson* case that where cash or currency is the subject matter of the joint tenancy, the amount must be specified in the instrument relied upon. Even if it is assumed that the agreement purports to convey title, which this court believes it clearly does not do, the necessary unities do not exist, because in any view of the dealings between plaintiff and his deceased wife, she acquired what interest she had in the currency in question prior to the time that defendant could possibly make claim to any part of it, from a different source, and in fact exercised exclusive control over the entire box contents.

Defendant also relies upon the decision in *In re Estate of Koester,* 286 Ill. App. 113, wherein it was held that a valid joint tenancy with right of survivorship in the contents of a safety deposit box was created by a rental contract which defendant contends is almost identical with the one executed by her. The Koester contract, however, specifically provided:

"That all property at any time . . . placed or contained in said safe . . . now does and shall, so long as it is contained therein, belong to the lessees jointly as joint tenants with right of survivorship therein, and may be withdrawn and removed therefrom, in whole or in part, by all, or any one or more of the lessees; . . . and upon every such death the title to all property then contained in said safe . . . shall be in the survivors jointly, with the right of survivorship therein or in the sole survivor if there be but one . . ."

This decision was not mentioned by either the Appellate Court (*In re Estate of Wilson,* 336 Ill. App. 18) or the Supreme Court in reviewing the same. It seems doubtful that the contract in the *Koester* case purports to convey title to the joint tenants as re-

quired by the *Wilson* decision, and it seems reasonably clear that it does not sufficiently identify and describe the property which the parties apparently intended was to be held in joint tenancy, as it seems to include, as to the subject matter, any and all property which might at any time be placed in the safety deposit box referred to in the agreement, which does not meet the requirements prescribed by the Supreme Court. It appears that at least a part of the securities involved in the *Koester* case were purchased with the joint funds of the parties to the agreement and if such securities were transferred to the parties as joint tenants with right of survivorship then the survivor doubtless did become the sole owner upon the death of the other, not, however, under the terms of a box agreement, but because of the form of the original transfer.

In the *Koester* case, the court observed that the parties, had they been the separate owners of the securities in question, would have been capable of entering into a joint tenancy agreement whereby the title would be conveyed to themselves jointly with the right of survivorship and that a bill of sale from the owners of the securities involved, to the parties to the box agreement as joint tenants with right of survivorship, would comply with the requirements of the statute and create a joint tenancy in them. The court appears to have concluded that the deposit box agreement, had, for all practical purposes, a similar effect, and met the requirements of the statute. As this court understands the *Wilson* decision, however, the statute provides no short-cuts and it is accordingly immaterial what the parties were capable of doing, or had the power to do, or whether they intended to accomplish by their agreement the same result which would have followed had the property in fact been conveyed to them as joint tenants.

112

For the reasons indicated, it appears that the *Koester* decision and *In re Estate of Bowes*, 279 Ill. App. 618 (abstract opinion), on which it relies, are both overruled by implication by the Supreme Court's decision in the *Wilson* case. However, even assuming that such is not the case and that the *Koester* decision correctly states the law, it is evident that the agreement relied on by defendant is very materially different from that in the *Koester* case which specifically provided that the box contents should belong to the lessees "as joint tenants with the right of survivorship," and spelled out the devolution of title down to the last survivor.

There is another feature of the agreement before this court which is of itself a complete answer to defendant's claim. The agreement provides that the depositary "may" deliver any and all property contained in the box in question to either lessee or to the survivor of them "without reference to the original ownership of the property so deposited." If this provision is understood to describe the performance which will discharge the bank from liability, and as having no effect upon the title to property so delivered, which this court believes, defendant is defeated because she is left with nothing on which she can base her claim to full ownership as surviving lessee. It appears that the evidence clearly fails to show that an *inter vivos* gift to defendant was completed by unqualified delivery to her of the property in question and if it did, such showing would appear to negative the possibility that a joint tenancy existed.

 On the other hand, if the agreement means that delivery by the depositary to one of the lessees while both are living not only discharges its obligation for the safekeeping of the property in the box but also transfers title in the property delivered to the lessee taking delivery, it is clear that the agreement does

113

not create a joint tenancy between the lessees as that concept is understood in the law of property. It has never been suggested that one of the parties to such a joint tenancy may convey or appropriate as his own, to the exclusion of the other joint tenant, the whole of the subject matter of a joint tenancy *except* by right of survivorship. Moreover, the law recognizes no means whereby the parties could, by contract, agree that the bank's delivery of the box contents shall affect title thereto one way or the other, because the bank, in such case being merely a bailee, at no time held, and, therefore, could not transfer title to any of the property in the box.

The court is fully aware that in the seemingly analogous case which arises upon creation of the commonly recognized joint bank account with right of survivorship between the depositors, either joint depositor may withdraw, and the bank may pay the whole amount on deposit, even while both depositors are living, and that such payment by the bank discharges its obligation to both depositors and, at least in the ordinary case, transfer the ownership in the funds to the payee-depositor, irrespective of the original ownership thereof. (*Reder v. Reder,* 312 Ill. 209.)

Although a bank account in this form is frequently referred to, both in the decisions (*Erwin v. Felter,* 283 Ill. 36; *Illinois Trust & Savings Bank v. VanVlack,* 310 Ill. 185), and by bankers and laymen alike, as a "joint tenancy" it is evident that there is a clear distinction between it and the joint tenancy recognized in the law of property. (See MR. JUSTICE THOMPSON's dissent in *Illinois Trust & Savings Bank v. VanVlack,* 310 Ill. 185.) The primary, if not the only, element common to both is the right of survivorship. It is perhaps more important, if confusion is to be avoided, to note the differences.

While there has been some little uncertainty in the decisions of the Illinois courts (See *Erwin v.*

114

*Felter,* 283 Ill. 36, and *Illinois Trust & Savings Bank v. VanVlack,* 310 Ill. 185) and irreconcilable conflict in the decisions in the various other jurisdictions concerning the legal theory upon which the rights of the parties to such a joint bank account may be sustained (48 C. J. S., 926, 927), the Illinois Supreme Court has recognized that the law of property relating to joint tenancy has nothing to do with a joint deposit in this form and that the rights of the depositors and the depositary depend upon their intention as expressed in the deposit agreement (*Reder v. Reder,* 312 Ill. 209), a deposit contract of the nature described above being sanctioned by the first proviso contained in section 2 of the Joint Rights and Obligations Act. Moreover, the problem of title transfer from the original depositor to his codepositor which arises as noted above in connection with a bank box bailment, is not an obstacle in the case of a joint deposit, because when funds are deposited with a bank in a general account, title thereto passes to the bank, resulting in the creation of a debt and giving rise to the bank's obligation to repay an equal amount (*Mutual Accident Ass'n of the Northwest v. Jacobs,* 141 Ill. 261) and there appears to be no reason in principle why payment cannot be made to such person or persons as the bank and the depositors may agree in their deposit contract.

On the other hand, the creation of a joint tenancy as that concept is understood in the law of property, depends not only on the existence of an intention to create that form of ownership (*Deslauriers v. Senesac,* 331 Ill. 437; 48 C. J. S., 916, 917) but also upon compliance with certain technical conditions imposed by common law and likewise by statute. Neither the intention nor the compliance with any of these conditions taken alone, is sufficient to create the interest, but all must be present.

As the record before the court fails to show these necessary concurrent elements, and because of the

additional considerations noted above, it is the opinion of this court that the form of joint tenancy with right of ownership recognized in the law of property was not established in this case.

 Defendant's alternative contention that if a joint tenancy in the box contents was not created, section 2 of the Joint Rights and Obligations Act requires that a tenancy in common must be declared to exist between her and plaintiff's deceased wife, is fully answered by the Supreme Court in the *Wilson* case. There being shown no transfer of the property in question from plaintiff's wife to defendant, neither a joint tenancy nor a tenancy in common ever arose.

 While the decree is not in accordance with plaintiff's specific prayer for relief, he did not file objections to the findings of the master and has not urged any error in the decree, as he is apparently entitled to the bulk of his deceased wife's estate under the terms of her will and therefore is satisfied with the decree. Accordingly the finding in the decree that plaintiff is entitled to only half of the currency in question has not been contested in this court and as this conclusion is not contrary to the proof or the factual allegations of the complaint, defendant's contention that the finding is in fatal conflict and variance with plaintiff's material allegations is without merit. As plaintiff also prayed for general relief, he may be denied the special relief sought, but may be granted such relief as he may be found to be entitled to under the proof (*Anson v. Haywood,* 397 Ill. 370).

The decree of the circuit court is affirmed.

*Affirmed.*