AURELIA PESCETTO, Plaintiff-Appellee, v. COLONIAL TRUST & SAVINGS BANK *et al.*, Defendants-Appellants.

Third District   No. 3—84—0337

Opinion filed December 31, 1984.

James A. McPhedren, of Anthony C. Raccuglia & Associates, of Peru, of appellants.

John Olivero and William LaSorella, both of Peru, for appellee.

PRESIDING JUSTICE HEIPLE delivered the opinion of the court:

Defendant Colonial Trust & Savings Bank (the bank) appeals from a judgment in favor of plaintiff Aurelia Pescetto in the amount of $10,721.93 on count I of her complaint. The trial court certified this interlocutory appeal pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

Aurelia Pescetto and her late husband, Battist, had a joint tenancy savings account with the bank. During his lifetime, Battist took out certain loans with the bank. As security for these loans, Battist pledged the account in question. Aurelia was unaware of her husband's use of the account in this manner. The bank, finding Battist's

loans to be in default after his death, enforced its security interest by charging the loans against the account. Aurelia, as surviving joint tenant, brought the instant action to establish her rights to the funds free of any claims by the bank. Her motion for summary judgment was granted by the circuit court of La Salle County. The trial court based its ruling on cases holding that the mortgage by one joint tenant of his interest in real property held in joint tenancy does not encumber the interest taken by the surviving joint tenant. See, *e.g., Harms v. Sprague* (1983), 119 Ill. App. 3d 503, 456 N.E.2d 976, *aff'd* (1984), 105 Ill. 2d 215.

We disagree with the analogy. The common law of real property cannot govern the outcome here. The only similarity between a joint tenancy in real property and a joint tenancy bank account is the right of survivorship. With a joint tenancy in real property, the ability to convey one's interest is limited to an "equal, aliquot share of joint property." (*People v. Varel* (1933), 351 Ill. 96, 101, 184 N.E. 209.) One of the two joint tenants may not convey as his own, to the exclusion of the other, the subject matter of the joint tenancy except by survivorship. *David v. Ridgely-Farmers Safe Deposit Co.* (1950), 342 Ill. App. 96, 95 N.E.2d 725.

The bank account, however, stands on a different footing. It is governed by contract. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 385 N.E.2d 63.) The contract in question here is the signature card agreement signed by the Pescettos. The portions of the agreement relevant to this case are as follows:

> "You [the bank] are authorized to recognize any of the signatures subscribed below in the payment of funds or the transaction of any business for this account ***."

> "The undersigned, joint depositors, hereby agree with the other and with the bank, that all sums now on deposit *** are and shall be owned by them jointly, with rights of survivorship, and be subject to the order or receipt of either of them or the survivor of them and payment to or on the order of either or the survivor shall be valid and discharge said bank from liability."

■ There can be no question that if Aurelia had joined Battist in pledging the account, the lien would survive the death of Battist. That is to say, a pledge by both joint tenants would be inarguably effectual. Thus, since the contract between the bank and the two joint tenants authorizes each tenant to deal unilaterally with the account, it is equally clear that the conduct of one joint tenant is sufficient to pledge the account as to both. In the case at hand, the pledge by Bat-

tist was of the whole account—everything, both his interest and the interest of Aurelia. Since Battist had the authority to pledge Aurelia's interest as well as his own interest in the account, the matter of his death is utterly of no moment. Battist did not pledge his interest subject to divestiture at his death. He pledged the whole account. The lien, therefore, survived his death. The bank was fully justified in applying the account thus pledged to the satisfaction of the delinquent loans.

Aurelia also argues that public policy supports her position. She claims that as against the bank, she is the more innocent party relative to her husband's fiscal irresponsibility. There is also a hint of conspiracy, she alleges, in that Battist listed a post office box as his address so that she would be ignorant of his dealings. There is also a challenge to the outcome as upholding the creation of secret liens.

■ The innocent party appellation does not wear well. The marital estate of the Pescettos was benefitted, at least in theory, by the money borrowed from the bank. If the bank cannot satisfy its claims from the funds as pledged and cannot recoup the loans from Battist's estate, a windfall would result in favor of Aurelia. As to a conspiracy to keep her in the dark, there is nothing in the record to indicate the bank's awareness of anything of that nature. Apart from a special contractual agreement, which we do not have in this case, no requirement exists that both joint tenants of a bank account be informed of transactions affecting the account by a single joint tenant. As to the charge that the pledge created a secret lien, there is no statutory or other requirement that the internal pledge of a bank account by a depositor be noticed or publicly filed in any way.

Accordingly, the judgment of the circuit court is reversed and remanded with the direction that judgment be entered for the bank on count I of the complaint.

Reversed and remanded.

STOUDER and WOMBACHER, JJ., concur.