(No. 28199.—)
MARGARETT WILLIAMS, Appellee, *vs.* CHALON GARVIN
*et al.,* Appellants.

*Opinion filed January 17, 1945.*

EOVALDI & EOVALDI, of Benton, for appellants.

ROY C. MARTIN, of Benton, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Margarett Williams, hereinafter referred to as plaintiff, filed a complaint in the circuit court of Franklin county against Mildred Parrish and her husband Orval Parrish, to set aside a deed to an undivided one-half of eighty acres of land in that county and an unassigned dower in the remaining one-half. Her complaint alleges that on October 24, 1942, desiring to make such disposition of her property as would secure her suitable maintenance and support for the remainder of her life, she conveyed all her interest in the real estate to her daughter Effie Garvin, the wife of defendant Chalon Garvin, and the mother of

Mildred Parrish. She alleges the sole consideration for such conveyance was an agreement by Effie Garvin to maintain and care for plaintiff for the remainder of her life. The complaint charges that said Effie Garvin failed so to do but that, on the other hand, Effie Garvin and her husband were largely supported by money belonging to plaintiff and by township relief.

On March 29, 1943, some five months after making the deed, Effie Garvin died intestate, leaving her husband and daughter as her sole surviving heirs. At 1:30 P. M. on the day of her death, defendant Chalon Garvin filed the deed for record. This, plaintiff alleges, was contrary to the understanding of the parties. The complaint alleges that, since the time of the death of Effie Garvin, plaintiff had been making her home with another daughter, Mrs. Ray Foster, and has been cared for and supported by her and by the Department of Public Welfare.

The complaint alleges that for many years prior to the making of this deed plaintiff had been a widow and supported herself from the income derived from these eighty acres, and that at the time she went to live with Effie Garvin she had a substantial sum of money, but that it was all expended in the support of the Garvins and herself. A motion was made to dismiss this complaint, which was overruled, and the defendants answered denying all its material allegations. The cause was tried before the chancellor who found the issues for the plaintiff, ordered the deed rescinded and that plaintiff have restitution of the premises.

There is no question as to the execution of the deed. The attorney who prepared the deed and took the acknowledgement testified that defendant Chalon Garvin came to his house and asked him to go to the home of plaintiff to make the deed. He testified that plaintiff told him that she wished to give her property to Effie; that she expected to stay with her and that she wanted her to have the deed.

There was some talk to the effect that Effie was to keep her mother but he could not say that there was a statement that she was to keep her for her natural life.

The evidence shows that at the time of the trial plaintiff was 94 years of age; that from the time she was 85 she lived with different ones of her children during the winter and on the 80-acre farm during the summer; that she would live for a few months with one of her daughters and then go to another; that during the latter part of September, 1942, she went to live with the Garvins and remained there until Effie Garvin's death. During the time she was there, Effie Garvin and her husband ran a small grocery store and the evidence shows that during the month of March, the entire Garvin family was on relief.

The question is raised as to the competency of the testimony of Julia Foster, a daughter of plaintiff, and Ray, her husband, with whom the plaintiff was living at the time of the trial, it being contended by the defendants that they are parties in interest, and since the defendants were defending as heirs-at-law of Effie Garvin, the testimony of the Fosters was incompetent under section 2 of the Evidence Act. (Ill. Rev. Stat. 1943, chap. 51, par. 2.) This is a misapprehension as to scope of this section of the Evidence Act. As is established by the decisions of this court, the interest to disqualify the Fosters must have been direct. A person directly interested within the meaning of section 2 of the Evidence Act must also have an immediate interest, (*Brownlie* v. *Brownlie,* 351 Ill. 72,) that is, an interest which will result in a gain or loss from the judgment or decree. (*Britt* v. *Darnell,* 315 Ill. 385.) True, if the plaintiff did not outlive Julia Foster and did not dispose of the property prior to her death, the Fosters would profit. But this is not the character of interest which this court has held to be certain, direct and immediate. Julia may not outlive her mother or her mother may sell the property. The rule governing competency of

witnesses in such a case is also announced in *Boyd* v. *Boyd,* 163 Ill. 611, and *Crane* v. *Crane,* 81 Ill. 165.

Defendants claim there has been no failure or refusal to maintain and support plaintiff. The facts shown, however, are that during the five months plaintiff was living with the Garvins, she had received in the neighborhood of $200, and had but ten cents left when she went to the Fosters. Also the evidence is that no offer was made after the death of Effie Garvin to support plaintiff, and while defendants were not required to provide a home for her elsewhere than at their home, we think, on the whole record, the chancellor who heard and saw the witnesses was justified in concluding that there was an agreement that the Garvins were to keep and support plaintiff during her lifetime and that there has been a failure of that consideration. We do not feel disposed, therefore, to disturb that finding.

The decree of the circuit court will be affirmed.

*Decree affirmed.*