JANET O'VADKA, Plaintiff-Appellee, v. REND LAKE BANK, Defendant and Third-Party Plaintiff-Appellee (William E. Aulgur, Ex'r of the Estate of Lawrence E. Davis, Deceased, Third-Party Defendant-Appellant).—*In re* ESTATE OF LAWRENCE E. DAVIS, Deceased (Rend Lake Bank, Claimant-Appellee, v. William E. Aulgur, as Ex'r of the Estate of Lawrence Edward Davis, Deceased, Appellant).

Fifth District   Nos. 5—88—0528, 5—89—0268 cons.

Opinion filed September 27, 1990.

1008

William E. Aulgur, of Eldorado, appellant *pro se.*

J.C. Mitchell, of Mitchell & Armstrong, Ltd., of Marion, for appellee Rend Lake Bank.

William A. Alexander, of Troutt, Alexander, Popit & Warner, of Benton, for appellee Janet O'Vadka.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

The sole issue presented in this appeal is whether summary judgment was properly granted.

On November 17, 1987, the plaintiff, Janet O'Vadka, brought suit against the defendant, Rend Lake Bank (hereafter sometimes referred to as the bank), in case No. 87—L—123, seeking the sum of $107,493, which is the amount alleged in the complaint to have been wrongfully paid by the defendant to William E. Aulgur, third-party defendant herein and executor of the estate of Lawrence Edward Davis. The complaint alleged that prior to his death Lawrence Davis had created a joint account with right of survivorship; according to the complaint, the defendant was the depository institution, and the decedent and plaintiff were the joint tenants. Following Lawrence Davis' death on June 25, 1987, and William Aulgur's appointment as executor of his estate on July 14, 1987, the defendant, upon the request of William Aulgur, paid to him as executor the entire balance of the account in question in the amount above stated. Following the refusal of the defendant to pay this sum to the plaintiff as surviving joint tenant, plaintiff instituted this suit. Attached to the complaint as exhibit "A" is the account, or signature, card pertaining to the account in dispute, account number 400 3124. The defendant filed a third-party complaint against William E. Aulgur, as executor, asking that, in the event it is found liable to Janet O'Vadka for judgment as prayed for in her complaint, it be awarded judgment against William Aulgur in an identical amount.

On July 1, 1988, the plaintiff moved for summary judgment, which motion was supported by discovery depositions of certain of defendant's officers, the discovery deposition of William Aulgur, and an affidavit of the plaintiff. The record contains a photocopy of the account, or signature, card, which is identified as plaintiff's deposition exhibit No. 3 and is attached to an affidavit of the plaintiff. On this card in a box beside the words "Personal Account" two "X"'s have been typed and are readily visible. The box beside the words "Commercial Account" is blank. Beside the words "JOINT ACCOUNT WITH SURVIVORSHIP" a faint mark is barely visible. No mark appears beside the words "NO

SURVIVORSHIP INTENDED." The card bears the signatures of "L.E. Davis" and "S.J. O'Vadka."

Patricia Gossett, an assistant cashier at the defendant bank, testified in a discovery deposition taken on behalf of the plaintiff, attached to the plaintiff's motion for summary judgment, that when Lawrence Davis had opened the account on April 22, 1986, she had assisted him. She did not remember whether she had had a "personal conversation" with him. She testified that he had opened "[a] personal account with joint ownership." It was, she said, to be a joint account with "Jan O'Vadka." Asked, "And did he indicate to you what type of an account this was to be?" the witness answered, "Yes. Because I marked it so." Asked, "But when he [Lawrence Davis] was in the bank he told you that he wanted it to be a joint account with Miss O'Vadka?" the witness responded, "Yes." On cross-examination the following colloquy occurred between counsel for the executor and the witness:

"Q. Now, I've examined that [the marking beside the words 'JOINT ACCOUNT WITH SURVIVORSHIP'], the original of that, and that looks to me like there might have been a correction made or some attempt to lift off with a correction typewriter on that box.

A. Could have been or it could have been just the typewriter mistyping, because when you look at the carbon copy you will see that it is very plain on there. It was put on there in both places.

Q. Okay. Yeah, but my question is this: When you type on that type of typewriter and you use a carbon it would be in both places, but then when you went to lift off you couldn't lift off the carbon—

A. No, but you could white it out."

Neither the original nor the carbon copy of the account card is included in the record for review. Upon redirect examination, when asked, "There is no question in your mind that this was a joint account of L.E. Davis, is there?" the witness responded, "No. No question at all."

Don Griffin, an executive vice-president of the bank, testified in a discovery deposition taken on behalf of the plaintiff, attached to the plaintiff's motion for summary judgment, concerning the account card. On cross-examination he stated that the two "X" 's beside the words "Personal Account" were made by a typewriter and that the mark beside the words "JOINT ACCOUNT WITH SURVIVORSHIP" "looks like a light typewriter imprint." He described the mark as "not as distinct" as the two "X" 's in the box next to the words "Personal Account." Asked, "Is it possible that there has been some correction made on that?" the witness answered, "I don't believe that there has been a

correction made on that." He testified further, "To me it looks to me like it was meant to be a joint account."

The defendant objected to the plaintiff's motion for summary judgment and itself moved for summary judgment against third-party defendant William Aulgur, stating that, if there are no genuine issues as to any material fact and plaintiff is entitled to judgment as a matter of law against the defendant, "then correspondingly," the defendant would necessarily be entitled to summary judgment against William Aulgur as executor. In its objection to the plaintiff's motion for summary judgment the defendant contended that a material issue of fact exists, that is, the question of the intent of Lawrence Davis upon the establishment of the account in question, "be it joint with right of survivorship with Plaintiff, Janet O'Vadka, or for convenience sake only." An affidavit of Patricia Gossett is attached as an exhibit to the bank's objection to the plaintiff's motion for summary judgment. In paragraph nine of the affidavit she states, "I would have no testimony as to what Mr. Davis' true intent was when he deposited the $100,000 in the account in question or whether it was an account set up for joint tenancy purposes or for purposes of convenience."

William Aulgur responded to both motions for summary judgment by adopting the arguments of the bank and the authority it cited in its objection to the plaintiff's motion for summary judgment. The executor stated further that "the depositions taken and attached to Plaintiff's original motion are hereby adopted as exhibits to this response in the interest of conserving the clerk's space and for purposes of brevity."

At the hearing on the motions for summary judgment the plaintiff relied upon *Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 591, 202 N.E.2d 470, 472, holding

> "that an instrument creating a joint account under the statutes presumably speaks the whole truth; and, in order to go behind the terms of the agreement, the one claiming adversely thereto has the burden of establishing by clear and convincing evidence that a gift was not intended. This burden does not shift to the party claiming under the agreement."

Following the hearing, the trial court granted both motions for summary judgment in an order entered on July 28, 1988. The court expressly found that there is no genuine issue as to any material fact and that

> "L.E. Davis created a joint account with right of survivorship, being account number 400 3124, at the Rend Lake Bank on April 22, 1986. L.E. Davis and S.J. O'Vadka were the joint account holders."

The trial court found further that the defendant had wrongfully paid to William Aulgur as executor the sum of $107,493.01, which was the entire balance of the account. Stating that "[n]o facts have been produced by anyone showing that L.E. Davis intended this account to be for any purpose other than a joint account with right of survivorship," the court found the plaintiff entitled to the sum of $107,493.01 plus interest at a specified rate from the bank and the bank entitled to the same sum at the same specified rate of interest from the executor. The trial court entered judgment accordingly for the plaintiff against the bank and for the bank against the executor. The executor perfected this appeal from the summary judgment entered against it and in favor of the bank as third-party plaintiff, and the bank filed an appeal from the summary judgment entered against it and in favor of the plaintiff.

In *In re Estate of Lawrence Edward Davis, Deceased,* No. 87—P—57, Rend Lake Bank filed a claim against the decedent's estate for the sum of $107,493.01, subsequently amended to $46,482.37 to reflect a set off of $61,010.64, which amount was in an account held by the executor of the decedent's estate in the Rend Lake Bank. Following a hearing the trial court entered an order on February 15, 1989, denying a motion by the executor attacking the claim and allowing the claim in its amended form of $46,482.37. The trial court ordered the claim to be paid by the executor to the Rend Lake Bank, having expressly found that "the findings and judgment in Cause No. 87—L—123 between the same parties and upon the same issues are res judicata to the parties and issues involved with the claim filed herein and the attempted amended claim by the Rend Lake Bank against the Estate of Lawrence Edward Davis, Deceased." In a subsequent order the trial court denied the executor's motion for rehearing, and an appeal by the executor followed. That appeal, No. 5—89—0268, has been consolidated with this one.

In his brief the executor maintains that "the most significant piece of evidence creates doubt as to the intent of the decedent simply by it's [*sic*] examination." He concludes that "[t]he signature card itself does not lend itself to one interpretation." Further, he asserts, "inconsistency in Patricia Gossett's affidavit and deposition create[s] doubt as to the intent of L.E. Davis at the creation of the account." He is, he maintains, "entitled to a full hearing to resolve these obvious differences in the evidence submitted by Plaintiff Janet O'Vadka (the deposition) and the evidence submitted by Rend Lake Bank (the affidavit)." The executor contends additionally that *Murgic* was applied "erroneously and prematurely" inasmuch as *Murgic* "assumes that the instrument is clear on it's [*sic*] face, that is, it clearly establishes a joint tenancy," unlike the

instant case, in which the instrument itself is "unclear as to whether the account was created jointly with right of survivorship or merely named a co-party for purposes of convenience." The executor argues further that *"Murgic,* which deals with burden of proof, is inapplicable to the motion for summary judgment, for a party's burden of proof involves weighing facts and the summary judgment motion properly considers only questions of law." Finally, the executor maintains concerning *Murgic* that it is inapplicable here because that court was applying a standard of review for a full evidentiary hearing whereas the standard here, upon motion for summary judgment, is whether there was a material question of fact.

In her brief the plaintiff phrases the issue for review by this court as whether "the trial court's application of *Murgic* to grant summary judgment for O'Vadka [was] correct" and concludes that it was because *"Murgic* puts the burden on the Bank, and that burden was not met." "As between the Bank and O'Vadka," she states, "the facts were not really disputed." Plaintiff urges that the executor presented no affidavits in response to the bank's motion for summary judgment and "failed to present *any* materials, *e.g.,* depositions, to support his position." (Emphasis in original.) She argues that, as a result, at the time the motions for summary judgment were heard the only facts before the trial court were those presented by the plaintiff and the bank.

In its brief the bank relies upon *Murgic,* arguing that the burden fell upon the executor "at the very least, to present some factual basis that would arguably entitle him to a judgment under the applicable law by clear and convincing evidence." Concerning its appeal the bank states that as appellant it takes the position that it is entitled to summary judgment against the executor; however, if this court should reverse the summary judgment entered in its favor, the summary judgment entered in favor of the plaintiff against the bank should likewise be reversed and the cause remanded for further proceedings.

An *amicus curiae* brief has been filed by Mark Davis, Robin Davis, and Kandi Davis, described as heirs at law and beneficiaries under the will of Lawrence Davis. In July of 1988 they moved to consolidate another cause of action, No. 88—L—14, with No. 87—L—123 and petitioned to intervene in No. 87—L—123. The trial court denied their motion to consolidate and denied leave to intervene. In their brief as *amicus curiae,* Mark, Robin and Kandi Davis stress that plaintiff's initial listing of this account as one of decedent's personal accounts and not as a joint account is evidence to be considered by the trier of fact in determining whether the account is a joint one. They argue that her motion

"shows upon its face that there is a material issue of fact in the case. It should be a matter for a jury to determine whether to give greater credence to a written admission against her interest or to her self serving [*sic*] declaration made at a later date after some reflection as to what would be in her best interest."

They urge that the markings that appear on the account card "do not suggest that the existence of a joint account is the only possible inference from such undisputed facts." At a minimum, they say, these circumstances render this instrument ambiguous and subject to interpretation by a trier of fact.

■■ ■ Title to personal property may be held in joint tenancy with right of survivorship where the appropriate language is employed at the creation of the tenancy. (Ill. Rev. Stat. 1989, ch. 76, par. 2; see *In re Estate of Pokorney* (1968), 99 Ill. App. 2d 230, 240 N.E.2d 740.) Joint tenancies in personal property are governed by section 2 of "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1985, ch. 76, par. 2). (See *David v. Ridgely-Farmers Safe Deposit Co.* (1950), 342 Ill. App. 96, 95 N.E.2d 725.) As stated in *Pokorney*, if the joint tenancy is created in accordance with the statutory provisions, the presumption of donative intent arises. Recently in *In re Estate of Lewis* (1990), 193 Ill. App. 3d 316, 319, 549 N.E.2d 960, 961-62, the court discussed both *Murgic* and the earlier case of *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850, observing:

"In *Murgic* and *Wubbena*, the supreme court clarified the law in regard to statutory provisions which create interest in intangible personalty containing rights of survivorship. The substance of these holdings was (1) the rights of survivorship are created by the execution of the various instruments provided in the statute in conformity with the provisions of the statute; (2) following common law procedures necessary to create rights of survivorship was no longer necessary; (3) compliance with the statutory requirements creates a presumption that those furnishing consideration for the creation of such interests intend to make a gift to those who furnish less than their share or no consideration; and (4) 'courts may look behind the form of the transaction to determine the parties' rights,' but, in doing so, 'the burden is upon one questioning the gift to overcome the presumption by clear and convincing proof.' *Murgic*, 31 Ill. 2d at 589, 202 N.E.2d at 471-72."

The following conditions must be met in order to establish a joint tenancy with right of survivorship as personal property, and, except as the statute makes specific provisions governing certain other cases, the re-

quirements are the same whether the property in question is located in a safety deposit box or elsewhere: (1) such an interest can be created only by means of a written instrument; (2) the instrument must express an intention to create a joint tenancy in personal property and apparently must expressly provide that the property so held is to be subject to the right of survivorship between the owners thereof; and (3) the instrument should comply with the general requirements of a will as to definitions of description of subject matter, parties, and certainty of its object. (*David*, 342 Ill. App. 96, 95 N.E.2d 725.) In the instant case, the parties dispute whether the instrument expresses an intention to create a joint tenancy in personal property. Since the parties here dispute the terms of the agreement, we deem *Murgic* inapplicable. We do not consider the executor's argument concerning the inapplicability of *Murgic* to a motion for summary judgment.

Section 2—1005(c) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)) provides that summary judgment shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In making the determination whether there is a genuine issue as to any material fact, the court must construe the pleadings, depositions, and affidavits most strictly against the moving party and most liberally in favor of the opponent. (*Martin v. American Legion Post No. 784* (1978), 66 Ill. App. 3d 116, 383 N.E.2d 672.) Where the facts admit of more than one conclusion, including a conclusion unfavorable to the party moving for summary judgment, such facts cannot support a motion for summary judgment. (*Martin*, 66 Ill. App. 3d 116, 383 N.E.2d 672.) In determining if there is a genuine issue of material fact, inferences may be drawn from the facts that are not in dispute. (*Riley v. Singer* (1979), 75 Ill. App. 3d 1036, 394 N.E.2d 746.) Thus, if fair-minded persons could draw different inferences from the facts, a triable issue exists and a motion for summary judgment must be denied. (*Riley*, 75 Ill. App. 3d 1036, 394 N.E.2d 746.) It is only when the undisputed facts are susceptible of but a single inference that the issue becomes one of law. (*Riley*, 75 Ill. App. 3d 1036, 394 N.E.2d 746.) Summary judgment should not be entered even if there is no dispute in the evidence, if reasonable persons could draw different conclusions from the undisputed evidence. (*Martin v. Hertz Corp.* (1982), 104 Ill. App. 3d 592, 432 N.E.2d 1262.) If the court is presented with any set of facts about which reasonable men might disagree, summary judgment should be denied. (*Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 344 N.E.2d 29.) The right of a moving party to obtain a summary judg-

ment must be clear and free from doubt. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) The summary judgment procedure may not be used to try any issue; it is not a modified trial procedure. (*Manahan*, 50 Ill. App. 3d 9, 365 N.E.2d 1045.) The summary judgment procedure is not intended to be used as a means of trying an issue of fact, but rather the function of such procedure is to determine whether there is an issue of fact to be tried. *Lesser*, 36 Ill. App. 3d 433, 344 N.E.2d 29.

Concerning the contentions of the plaintiff and the bank that the executor is not entitled to summary judgment for failure to submit counteraffidavits, for example, or *"any* materials" such as depositions in support of his position, we note that the executor did adopt as exhibits to his response the depositions taken and attached to the plaintiff's motion for summary judgment. Further, in *Amsted Industries, Inc. v. Pollak Industries, Inc.* (1978), 65 Ill. App. 3d 545, 382 N.E.2d 393, in which summary judgment had been entered by the trial court against the defendants and in favor of the plaintiff, the defendants submitted no evidence of their own in opposition but contended that summary judgment was not properly granted on the evidence submitted by the plaintiff. Reversing the summary judgment upon review, the court determined that the record disclosed that reasonable men could arrive at different conclusions on the issue of the defendant Pollak's personal liability therein.

■ In the instant case a trier of fact might infer, at least from the photocopy of the account card with which we have been provided, that a correction had been undertaken to delete the mark beside the words "JOINT ACCOUNT WITH SURVIVORSHIP." In her deposition Patricia Gossett testified that it "[c]ould have been" that a correction had been made or an attempt had been made to lift off that mark using a correction ribbon on a typewriter. This witness suggested as an alternative explanation for the faintness of this mark that "it could have been just the typewriter mistyping," particularly since the distinct mark on the carbon copy could have been covered by "whit[ing] it out." Don Griffin expressed the view that he did not "believe" that a correction had been made. Patricia Gossett testified further that Lawrence Davis had indicated to her the kind of account this was to be "[b]ecause I marked it so." The facts here admit of more than one conclusion, including one unfavorable to the plaintiff movant for summary·judgment. Thus, they cannot support the plaintiff's motion for summary judgment. A triable issue exists, and the motion for summary judgment should have been denied. The trial court erred in entering summary judgment in favor of the plaintiff and against the bank, and we accordingly re-

verse that judgment. Similarly, the trial court erred in entering summary judgment in favor of the bank against the executor, and we hereby reverse that judgment. We remand the cause of action for further proceedings. The order allowing the bank's amended claim of $46,482.37 against the estate in *In re Estate of Lawrence Edward Davis, Deceased,* No. 87—P—57, the appeal of which, No. 5—89—0268, has been consolidated with No. 5—88—0528, is therefore reversed.

No. 87—L—123, Reversed and remanded.
No. 87—P—57, Reversed.

GOLDENHERSH and HOWERTON, JJ., concur.