617 N.E.2d 40 (1993)
247 Ill. App.3d 112
186 Ill.Dec. 801
ESTATE OF Edmund G. POLIQUIN, Deceased (John B. Murnighan, Administrator with Will Annexed, Petitioner-Appellant and Cross-Appellee; Mary Carden, Respondent-Appellee and Cross-Appellant; and First State Bank and Trust Company of Park Ridge, Respondent).
No. 1-91-4054.
Appellate Court of Illinois, First District, Third Division.
March 31, 1993.
Rehearing Denied May 28, 1993.
*41 Kovar, Brittain, Sledz & Morris, Chicago, for appellant and cross-appellee; John B. Murnighan, of counsel.
Carey, Filter, White and Boland, Chicago, for respondent appellee/cross appellant; Edmund P. Boland and James F. White, of counsel.
Justice CERDA delivered the opinion of the court:
Petitioner John Murnighan, administrator with the will annexed of the estate of Edmund G. Poliquin, decedent, appeals from the trial court's judgment determining that a certificate of deposit (CD) was held by decedent and respondent Mary Carden as tenants in common, awarding one-half of the CD to the estate of Edmund G. Poliquin and one-half to Mary Carden. Petitioner contends that respondent failed to meet her burden of proof of a gift of the CD or of any interest therein by clear and convincing evidence and also claims that the trial court erred in determining the procedure to be used during trial. Respondent has cross appealed maintaining that it was proved that certain of the deposits in question were created in compliance with the Joint Rights and Obligations Act (Ill. Rev.Stat.1989, ch. 76, par. 2) (Act) and that she presented sufficient evidence of a gift of the CD. We reverse.
Respondent testified at trial that she was decedent's niece, that they were close as she grew up, and that she maintained these ties after she married. She saw decedent at least once a week over a 17 year period until decedent moved in 1971. She hosted birthday and anniversary parties for decedent and his wife. Decedent repaired items for her and her family and purchased a washing machine for her. After moving from his home, decedent alternated between living with his two daughters in Connecticut and Chicago. For a short time he also lived with his grandson in Chicago. In 1987, decedent, who was age 96, came to live with respondent. He had a falling out with one daughter and was not invited to stay with his grandson. On January 15, 1988, decedent moved to the Oak Park Arms Hotel.
On January 3, 1987, while decedent lived with respondent, they opened a demand deposit account in joint tenancy and signed a buff-colored signature card to that effect. Phyllis Haban, who had little training concerning joint tenancy law, was a personal banking representative for the First State Bank and Trust Company of Park Ridge. *42 She testified that a blue card should have been used because decedent wanted an interest bearing NOW account. She then cut the signature portion from the card for the joint tenancy demand account and pasted it onto a card for an interest-bearing NOW account. The latter blue card did not contain the same joint tenancy language. However, a box on the blue card designated "Joint Survivorship" was marked.
On April 25, 1988, decedent and respondent went to the same bank to open an account with the purchase of a $50,000 CD. They both signed the card, which bore respondent's address on the back. Neither the CD nor the card contained joint tenancy or survivorship language. Both Haban and Jack Moore, who was a cashier at the bank in 1988, testified that ordinarily a base or reference account was established for future accounts that may be opened under the conditions required for the first account as long as the same parties were involved. Another signature card was not necessary for additional accounts nor was the joint tenancy language repeated; a checking account, money market account, savings account or CD would just be different sections of a single account. Haban testified that once decedent's checking account with a joint-tenancy-with-right-of-survivorship provision was executed, the CD account also would have contained that condition, since the same parties, decedent and respondent, were signatories to that account. Both Haban and Moore confirmed that only if an account with restrictions different then those of the reference account were to be established, would another card with different language be required. No signature card with right-of-survivorship language was available when a CD was purchased.
Respondent testified that while they were at the bank, decedent gave her the CD and said that it was hers. She placed the CD in a filing cabinet in her home until decedent died and then gave it to decedent's daughter to show the attorney for the estate. According to respondent this was a gift which decedent gave to her to "bypass his will."
In December 1988, the administrator brought this action as a citation against respondent, claiming that the estate was the rightful owner of the funds. After a hearing, the trial court held that respondent was entitled to one-half the funds as a tenant in common with decedent.
Petitioner Murnighan first argues that respondent Mary Carden failed to sustain her burden of proof of a gift by clear and convincing evidence. However, we will first consider first respondent's claim that she proved by a preponderance of the evidence that a joint tenancy in the CD was created in compliance with the Act. (Ill. Rev.Stat.1989, ch. 76, par. 2(b).) The Act governs the outcome of this issue. Section 2(b) states that in order to create rights of survivorship in personal property, each designated owner must sign an agreement authorizing payment of the entire account to the survivor. (See O'Vadka v. Rend Lake Bank (1990), 203 Ill.App.3d 1007, 149 Ill. Dec. 82, 561 N.E.2d 360.) A certificate of deposit is considered to be "other evidence of indebtedness" as noted in section 2(b) of the Act. In re Estate of White (1974), 56 Ill.2d 265, 307 N.E.2d 122.
In the case before us, the trial court found that no joint tenancy was established when a CD account was opened at the bank because no joint tenancy language was included on the card for the CD account and the bank employees did not testify to the trial court's satisfaction that there was a formal bank policy providing for CD joint tenancy accounts. The trial court also found that the Act required more compliance than was demonstrated by respondent. We agree.
We will next consider whether a gift to respondent of the CD was established. A gift is a voluntary gratuitous transfer of property from donor to donee where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee. (Little City Foundation v. Capsonic Group (1992), 231 Ill.App.3d 122, 172 Ill. Dec. 867, 596 N.E.2d 146.) In order to prove a valid inter vivos gift respondent *43 must show donative intent on the part of decedent, delivery, and acceptance. (In re Estate of Stahl (1973), 13 Ill.App.3d 680, 301 N.E.2d 82.) The trial court found that delivery of the certificate of deposit was made to respondent. Respondent testified that she accepted delivery, took the CD, and placed it in her file cabinet believing it to be a gift to her. No one refuted this testimony. The only question was whether respondent proved decedent's donative intent.
Donative intent is intention on the part of the donor that there be a present and irrevocable transfer of the subject gift; delivery of the gift is the means whereby the intent is given effect. (Hall v. Country Casualty Ins. Co. (1990), 204 Ill.App.3d 765, 150 Ill.Dec. 110, 562 N.E.2d 640.) Since we have found that no joint tenancy rights were established in the CD, there is no presumption of donative intent. (Murgic v. Granite City Trust and Savings Bank (1964), 31 Ill.2d 587, 202 N.E.2d 470.) The burden of proving facts to show a gift is on the donee, and the proof must be by clear and convincing evidence. (Frey v. Wubbena (1962), 26 Ill.2d, 185 N.E.2d 850.) Respondent testified that decedent said the CD was hers and gave it to her at the time it was opened. Respondent's address was on the signature card. After decedent died, decedent's daughter stated that respondent told her that respondent "had the CD that my dad [decedent] wanted her [respondent] to have." The trial court stated that this testimony did not rise to the level of clear and convincing evidence of donative intent.
The form of the agreement is not conclusive of the parties' intentions. (In re Estate of Schneider (1955), 6 Ill.2d 180, 127 N.E.2d 445.) Each case must be evaluated in light of the circumstances presented. (In re Estate of Hayes (1971), 131 Ill. App.2d 563, 268 N.E.2d 501.) If the account had been created for mere convenience, it would indicate a lack of donative intent. (In re Estate of Kaplan (1991), 219 Ill.App.3d 448, 162 Ill.Dec. 149, 579 N.E.2d 963.) Here, decedent had opened a NOW checking account prior to the time the CD was placed in another account. Respondent did not receive statements for the checking account, nor did she write checks on that account. Although she was also a signator to that account, she did not believe she owned an interest in it and she has not claimed that account as hers. Since respondent did not handle decedent's personal financial affairs, we do not believe the CD was established for decedent's mere convenience. (In Re Estate of Martin (1990), 201 Ill.App.3d 1061, 147 Ill.Dec. 772, 559 N.E.2d 1112.) Respondent enjoyed a close relationship with decedent all her life. Not only did she grow up in the same house where he lived, she stayed close to him and his wife after she reached adulthood. After decedent had a falling out with each of his daughters, he lived with her at the age of 96 years. In our opinion a gift was proved by clear and convincing evidence and was sufficiently corroborated. (Estate of Hackenbroch (1962), 35 Ill. App.2d 155, 182 N.E.2d 375.) Although we have reversed the trial court on this point, we will also consider petitioner's other claims.
Petitioner first maintains that respondent did not disclose the entire transaction of April 25, 1988, because $5,000 was unaccounted for. Petitioner first brought this to the trial court's attention in a motion to reopen evidence following the trial. The trial court denied this motion. This is a matter within the trial court's discretion. Absent a showing of an abuse of that discretion we will not consider this question and here petitioner has failed to prove such abuse.
We reject petitioner's assertion that respondent's act of giving the CD to decedent's daughter following decedent's death transferred the right of payment. The CD in question is not an instrument payable to the bearer, and the Uniform Commercial Code is not applicable to this question. (Ill.Rev.Stat.1989, ch. 26, par. 3-104(1).) Moreover, we do not follow petitioner's argument regarding "alternate payees." Both decedent's and respondent's names were listed on the account holding *44 the CD. When the trial court determined that there was insufficient compliance with the requirements under the Act with regard to survivorship and that a gift of the entire CD account was not proved, the only alternative left was to find a tenancy in common under the statute.
Finally, petitioner has waived his right to appeal any decision regarding trial court procedure here. Petitioner argues that the trial court erred in allowing respondent to testify first, but fails to allege any prejudice as a result. The parties agreed that respondent had the burden of proving a joint tenancy with rights of survivorship existed because the trial court had previously determined, on a motion for summary judgment, that a genuine issue of fact existed regarding this issue.
Accordingly, because we find that respondent Mary Carden is entitled to the entire $50,000 CD, the judgment of the circuit court is reversed.
REVERSED.
RIZZI, J., concurs.
TULLY, P.J., dissents.
Presiding Justice TULLY, concurring in part and dissenting in part:
Although I concur in the majority's decision to reverse the judgment of the trial court in this cause, I must respectfully dissent from that portion of the majority's opinion which finds that respondent did not present sufficient evidence to prove that she held an interest in the CD as a joint tenant pursuant to the Joint Tenancy Act (hereinafter the Act) (Ill.Rev.Stat.1985, ch. 76, par. 1, et seq.) I believe that there was more than adequate evidence presented to establish that the CD was held in a joint tenancy.
Section 2 of the Act provides, in pertinent part, the following:
"§ 2. Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common; provided, that the foregoing shall not be deemed to impair or affect the rights, privileges and immunities, as set forth in the following provisos, (a), (b), (c), (d) and (e):
(a) When a deposit in any bank or trust company transacting business in this State has been made or shall hereinafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made * * *. (Emphasis added.) (Ill.Rev.Stat.1985, ch. 76, par. 2.)
Accordingly, the Act has been construed to require a signed agreement stating that the property is held in a joint tenancy subject to rights of survivorship. However, the existence of such an agreement can be demonstrated by evidence other than a signature card. It is appropriate for a court to consider the circumstances surrounding the creation of the account and events occurring afterwards. The factors relevant to such a consideration include the exercise of authority and control over the account and the survivor's understanding of the account. In Re Estate of Regelbrugge (1992), 225 Ill.App.3d 593, 596-97, 167 Ill. Dec. 710, 588 N.E.2d 351.
In Regelbrugge, the administrator of the decedent's estate initiated a citation proceeding on behalf of the estate to recover the proceeds of three bank accounts which passed by survivorship to decedent's sister and former wife, the respondents. The trial court entered judgment in favor of the estate with regard to one of the accounts. *45 One respondent appealed from the portion of the trial court's judgment finding the third account to be property of the estate.
The estate contended that because the original signature card bearing the respondent's signature was not produced, the respondent failed to prove that a joint tenancy came into existence. In rejecting this contention and reversing the trial court, the Regelbrugge court focused on the fact that the respondent, whose signature was missing, testified that she had signed a signature card for the account and that both she and the decedent kept a savings book for the account. The respondent also testified that while she only made deposits to the account during the decedent's lifetime, she understood that she was also able to make withdrawals. Additionally, the savings books admitted into evidence contained the names of both the decedent and the respondent. Finally, the testimony of both the respondent and a bank employee was corroborated by bank records indicating that the bank had sent the respondent statements for the account.
The uncontroverted facts in the case at hand more clearly demonstrate that decedent and respondent established a joint tenancy with right of survivorship account at the First State Bank and Trust Company of Park Ridge than those of Regelbrugge. Here, unlike in Regelbrugge, there was physical evidence of the fact that decedent and respondent both contemporaneously signed a buff colored signature cards which contained the requisite joint tenancy agreement. The buff colored cards were used by the bank for no purpose other than to create a joint tenancy. The bank employee servicing decedent and respondent realized that decedent and respondent signed a card for a non-interest bearing checking account (a buff card) when, in fact, the parties wished to open a "NOW" or interest bearing checking account. This employee, instead of having the parties sign a blue card for a NOW account, which contained a box to check off in order to create a joint tenancy, simply cut the signature portion off the buff card and pasted it onto the blue NOW account card and checked off the joint tenancy box. The record indicates that this operation, the cutting and pasting of the signed portions of signature cards, was standard procedure at the bank for those customers who wished to change their accounts' status from noninterest bearing to interest bearing.
Pursuant to bank policy, the original account opened by a customer would operate as the reference or base account for all subsequent accounts of the same title, i.e., individual accounts, joint tenancy accounts, etc. Thus, by initially opening a joint tenancy NOW account, any subsequent account, such as the CD, was tied to the base account as files of that account and subject to its terms. This fact is further corroborated by respondent's testimony, which the trial court found "very credible," that decedent requested the account be established under the same terms as the checking account. Additionally, both of the witnesses from the bank testified that had an account with terms differing from the original NOW account been requested, decedent and respondent would have both been required to execute a new Internal Revenue Service form W-9. No such new form was ever executed. Moreover, the CD references the base account number on its face. I believe all of this evidence clearly evinces an intent of decedent and respondent to create a joint tenancy with a right of survivorship.
Accordingly, I would reverse the circuit court's judgment on the basis of the existence of the CD as a joint tenancy.