In re Stanley W. NEIDERER, Debtor.

Mariann POGGE, Trustee, Glenn Neiderer, Plaintiffs,

v.

Gary NEIDERER, Defendant.

Bankruptcy No. 93–70363.
Adversary No. 94–7073.

United States Bankruptcy Court,
C.D. Illinois.

May 17, 1996.

Gordon W. Gates, Springfield, IL, for Plaintiffs.

Charles L. McNeil, Mason City, IL, for Defendant.

# 418

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

Before the Court is Plaintiffs' Complaint to Quiet Title and Defendant's Answer thereto. The question of fact in this case is whether William A. Neiderer died owning a certain 100–acre tract of land or whether a completed gift of the 100 acres was made to and accepted by the Defendant prior to William A. Neiderer's death.

In 1936, William A. Neiderer ("Bill") purchased a farm in rural Mason County, Illinois. The farm consisted of two tracts of land, totalling approximately 140 acres: (i) approximately 100 acres (including the home and outbuildings) in the Northwest Quarter of Section 6 ("the north farm"), and (ii) approximately 40 acres in the Southwest Quarter of Section 6 ("the south farm"), all in Township 21 North, Range 7 West of the Third Principal Meridian.

Bill and his wife were the parents of Glenn Neiderer ("Glenn") and Stanley Neiderer ("Stanley"), both of whom lived on the farm in their youth. Glenn later married and now resides in Rochester, Indiana. Stanley married in 1954, and his marriage produced two sons, Gary Neiderer ("Gary") and Paul Neiderer ("Paul"). In 1969, Stanley's marriage ended and he returned to the farm, where he has resided continuously since that date.

For a number of years prior to 1986, Bill, Stanley and Gary ran the farm and operated a produce stand and Christmas tree stand on the farm. Gary performed most of the actual labor on the farm, having started working on the farm years ago while he was still in high school.

On January 2, 1987, Bill died, leaving a last will and testament bequeathing his entire estate to Stanley and Glenn in equal shares and appointing Stanley and Glenn as co-executors of his estate. On March 27, 1987, the estate was opened and Stanley was appointed executor. Four months later, Stanley filed a sworn inventory in Bill's estate proceeding which included the two tracts of farmland which constitute the family farm.

On April 8, 1988, Bill's estate sold the south farm to Paul for $12,000. The executor's deed to Paul was signed by both Stanley and Glenn. Thereafter, the probate proceedings were inactive for a while, and were dismissed on February 20, 1990, without the estate having been fully administered.

During 1989, approximately 37.4 acres of the north farm was placed into a conservation program with a ten-year duration, and all government payments have been made to Stanley. Also commencing in 1989, Robert L. Henninger, an adjacent landowner, began cash renting 45 acres on the west side of the north farm, and all of his rent payments have been made to Stanley. Accordingly, the vast majority of the north farm had been either out of production or cash-rented since 1989.

On July 19, 1990, the First Bank of Havana obtained a state-court judgment against Stanley in the amount of $16,246.77 and recorded a memorandum of judgment in Mason County, thereby placing a judgment lien on any interest Stanley had on real estate in Mason County.

On January 31, 1991, the estate was reopened and Glenn was appointed sole executor.

In February, 1993, Gary recorded a deed dated December 1, 1986, whereby Bill purportedly conveyed the north farm to Gary. In addition to being signed by Bill, the deed was also signed by Stanley, as Bill's agent pursuant to a grant of power of attorney. The deed is not notarized, nor does it reveal the identity of its preparer. Gary acknowledges that he gave no consideration in exchange for the real estate purportedly conveyed to him by the deed.

On March 8, 1993, Stanley filed his Chapter 7 bankruptcy petition. Stanley did not list any interest in the north farm on his bankruptcy schedules.

■ The issue before the Court is whether a valid and complete gift of the north farm was made to Gary by Bill during Bill's lifetime. Resolution of this issue determines whether Stanley's bankruptcy estate has an interest in the north farm pursuant to Bill's last will and testament. Plaintiffs dispute (i) that Bill's signature on the deed is genuine, (ii) that the deed was delivered to Gary, (iii) that Bill relinquished dominion and control

over the north farm to Gary during his lifetime, and (iv) that the gift was accepted by Gary before Bill's death.

As the recipient, Gary bears the burden of proving all the elements of a completed gift by clear and convincing evidence. *U.S. v. One 1986 Chevrolet Monte Carlo, Vehicle Identification No. 1G1GZ37G2GR201549*, 817 F.Supp. 729 (N.D.Ill.1993); *Estate of Poliquin*, 247 Ill. App.3d 112, 617 N.E.2d 40, 186 Ill.Dec. 801 (1st Dist.1993), *appeal denied sub nom. Estate of Poliquin v. Carden*, 152 Ill.2d 557, 622 N.E.2d 1204, 190 Ill.Dec. 887 (1993); *Moniuszko v. Moniuszko*, 238 Ill.App.3d 523, 606 N.E.2d 468, 179 Ill.Dec. 636 (1st Dist.1992). Under Illinois law, the elements of a gift of realty are: (i) execution of a deed with an intent to convey; (ii) delivery of the deed, and (iii) acceptance by the grantee. *In re Strotheide*, 142 B.R. 850 (Bankr.S.D.Ill.1992) *citing Gallagher v. Girote*, 23 Ill.2d 170, 177 N.E.2d 103 (1961), *Chicago Land Clearance Comm. v. Yablong*, 20 Ill.2d 204, 170 N.E.2d 145 (1960).

As a preliminary matter, the Court must first address the admissibility of certain testimony offered by two witnesses at trial. After sustaining Plaintiffs' evidentiary objections to certain testimony of Alan Pherigo and Avalee Frese based upon the Dead–Man's Act, 735 ILCS 5/8–201, the Court allowed Defendant to make an offer of proof with respect to certain matters said and done in the presence of Bill prior to his death. Most of this testimony pertained to the purported execution and delivery by Bill of the subject deed. Having extensively reviewed relevant case law in this area, the Court now believes that the testimony of Mr. Pherigo and Ms. Frese regarding matters which were allegedly said or done in the presence of the decedent is admissible because the Dead–Man's Act prohibits only "adverse part(ies) or person(s) directly interested in the action" from testifying as to matters which took place in the presence of the deceased. 735 ILCS 5/8–201; *see also Hockersmith v. Cox*, 407 Ill. 321, 95 N.E.2d 464 (1950) (test of interest is whether he will gain or lose as a direct result of the suit); *Williams v. Garvin*, 389 Ill. 169, 58 N.E.2d 870 (1945) ("interest" must be direct and immediate). Because neither Mr. Pherigo nor Ms. Frese have any interest in the outcome of these proceedings, the Court can and will consider the testimony of Mr. Pherigo and Mr. Frese regarding matters which were allegedly said or done in the presence of the decedent before his death subject, however, to legitimate hearsay objections raised by Plaintiffs' counsel.

The subject deed bears what purports to be Bill's signature. In addition, the deed was also signed by Stanley, as Bill's agent under a power of attorney. Stanley testified that he signed the deed on his father's behalf on December 1, 1986. The genuineness of Stanley's signature is not disputed; the only evidence offered to dispute the genuineness of Bill's signature was Glenn's opinion testimony that the signature did not appear to be that of his father. Glenn expressed doubt that his father was able to see well enough in December, 1986, to place his name on the signature line.

Although Glenn's lay opinion on this matter is admissible, the fact that he is an interested party with no special expertise in the area of handwriting analysis effects the weight to which his testimony is entitled.

Mr. Pherigo testified that, on December 1, 1986, he was present in Bill's house, and that he saw Bill sign something and hand the signed paper to Gary. Mr. Pherigo could not identify what was signed and could not testify that the document signed was a deed. Ms. Frese also testified that, on December 1, 1986, she was present in Bill's house and that she saw Bill sign something and hand the signed paper to Gary. Like Mr. Pherigo, Ms. Frese could not identify what was signed. While the Court found both Mr. Pherigo and Ms. Frese to be forthright witnesses, their testimony was somewhat contradictory and sometimes inconsistent. In addition, neither was able to identify the document signed by Bill and handed to Gary. On balance, however, their testimony gives at least indirect support to the presumption that Bill's signature on the deed is genuine. Glenn's opinion testimony was insufficient to rebut this presumption.

In addition, Stanley's testimony that he signed the deed as his father's agent at his father's direction on December 1, 1986, was not refuted in any way, nor was the validity of the power of attorney questioned. Accordingly, the Court finds the deed to have been properly executed by both Bill and Stanley.

Stanley, Gary, Ms. Frese and Mr. Pherigo all testified that Bill's mental condition on and around December 1, 1986, was alert and coherent. This testimony leads the Court to conclude that Bill was aware of the effect of executing the deed, and that he executed the deed with the requisite donative intent.

Under Illinois law, delivery of a deed is essential to render it operative as a conveyance. *In re Strotheide, supra, citing McClugage v. Taylor,* 352 Ill. 550, 186 N.E. 145 (1933); *Herrin v. McCarthy,* 339 Ill. 530, 171 N.E. 621 (1930). The intention of the grantor is the primary and controlling factor in determining whether there has been a delivery, and anything which clearly manifests the grantor's intention that the deed become operative, that the grantor lose control thereof, and that the grantee become the owner of the deeded property is sufficient to show delivery. *Id.*

Gary's former wife Kay Painter testified that, on December 1, 1986, Gary brought home a deed. This testimony is important in that it places a document identified as a deed in Gary's hand on the date of the alleged execution. Ms. Painter's testimony is also valuable because the Court found Ms. Painter to be a credible witness whose testimony was entitled to a good deal of weight. This evidence, along with the supporting testimony of Ms. Frese and Mr. Pherigo that they each saw Bill hand Gary the document which Bill executed, constitutes clear and convincing evidence of delivery. There was no testimony or evidence offered to refute the evidence of delivery.

Plaintiff argues that during the 32–day period between the purported gift being made and Bill's death, nothing changed regarding the operation or possession of the north farm inasmuch as there was no relinquishment of dominion or control by Bill and no corresponding exercise of dominion and control by Gary. Consequently, Plaintiff argues, actual delivery of the subject matter of the gift did not occur prior to Bill's death and, additionally, the gift fails for lack of acceptance by Gary prior to Bill's death.

While Plaintiffs' argument has some superficial appeal, the Court finds it more instructive that, by signing and delivering the deed, Bill immediately and completely relinquished his legal right to exercise dominion and control over the subject property. At the same time, Gary, in receiving the deed, immediately acquired the legal right to do as he wished with the north farm. The fact that Gary declined to exercise the option to make dramatic changes prior to Bill's death does not mean that Bill had any legal right to prevent Gary from doing so, nor does it mean that there was a lack of acceptance of the gift on Gary's part. This is especially so given the specific facts of this case.

Those facts—the familial relationship of Bill, Stanley and Gary, their interdependence upon one another and the farm, and the manner in which farm finances and farm operations had traditionally been handled—make it difficult to imagine why Gary would have had the need or desire to make any major changes in matters regarding the farm. At the time the gift was made, Bill was over ninety years-old and was in poor health, Stanley was struggling financially and had nowhere else to live and no independent means of support, and Gary had his own home a mile or two away. Under these circumstances, it would not be illogical for Gary to decline to evict his grandfather and father or begin charging them rent once he acquired the deed to the north farm. While Plaintiff argues that Gary could have done less intrusive things to exercise dominion and control over the premises, e.g. change the tax bill, notify the utility companies or the phone company, the Court finds that his failure to do so to be not really instructive. Accordingly, the Court finds that not only was there delivery of the north farm by Bill, but there was also acceptance by Gary.

Following Bill's death, Gary's acts of dominion and control over the north farm became somewhat more evident. From 1986

through 1988, and in 1990 and 1991, Kay Painter testified that she paid the real estate taxes on the farm with cash given to her by Gary. In 1989, Joanne Dodds, Gary's mother, testified that she paid the real estate taxes on the farm with cash given to her by Gary. This evidence is irrelevant to prove acceptance of the gift by Gary because a valid gift must be completed during the donor's lifetime. *See Dudley v. Uptown National Bank of Moline*, 25 Ill.App.2d 514, 167 N.E.2d 257 (2d Dist.1960). However, it is important because it is inconsistent with Plaintiffs' theory that the deed constituted a fraudulent last-minute attempt to transfer the property to Gary before Stanley filed bankruptcy.

While the Court finds the timing of the appearance of the deed in this case slightly suspect, the Court also finds the apparent failure of Glenn to exercise any dominion and control over the property as co-executor and beneficiary under his father's will extremely odd as well. After having successfully removed Stanley from the position of co-executor in 1991, Glenn failed to do anything, including pay real estate taxes on the property, to indicate that Bill's probate estate, through its legally-appointed representative, owned or claimed to own the north farm. Even more curious is the fact that Glenn apparently never once inquired about his share (or the probate estate's share) of the CRP payments and cash rent payments. This apparent ambivalence over the years since 1986 did nothing to help Plaintiffs' case.

Glenn argues that the fact that Stanley signed up the farm for the CRP and the fact that Stanley negotiated a cash rent agreement with Robert Henninger supports his claim that Gary neither owned nor claimed to own the farm until the appearance of the deed in 1993. In addition, Glenn suggests that the cash used to pay the real estate taxes was given to Gary by Stanley. In the Court's opinion, Gary's testimony that he allowed Stanley to keep much or all of the CRP and cash rent proceeds as he needed to live on is not inconsistent with Gary's claim of ownership. Gary clearly expressed at trial that he felt morally obligated to look out for his father's basic needs, and the means by which he elected to do so was consistent with Stanley's living arrangement. As a tenant, it makes sense that Gary would allow Stanley to collect rents. As for the claim that the real estate taxes were paid by cash given to Gary from Stanley, again, it is not inconsistent with Gary's claim of ownership that CRP proceeds or rent proceeds not needed by Stanley to live on would be used to pay the real estate taxes.

For the reasons set forth above, the Court finds that the evidence supports Defendant's claim that a valid gift was made by Bill to Gary of the north farm. Hence, Stanley had no ownership interest in the north farm at the time he filed his bankruptcy petition herein. Accordingly, Plaintiffs' Complaint to Quiet Title must be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in an Opinion entered this day,

IT IS THEREFORE ORDERED that Plaintiffs' Complaint to Quiet Title be and is hereby denied.