In re Martin O. ERICSON and Barbara R. Ericson, Debtors.

Jeffrey D. Richardson, Trustee, Plaintiff,

v.

Martin O. Ericson, Barbara R. Ericson, Eleanor E. Ericson, and Community State Bank of Galva, Defendants.

Bankruptcy No. 02–74919.

Adversary No. 03–7147.

United States Bankruptcy Court, C.D. Illinois.

Nov. 12, 2003.

Lars Eric Ostling, Bloomington, IL, for Debtors.

Jeffrey D. Richardson, Decatur, IL, trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether a certificate of deposit payable to the Debtor "and/or" his mother is an asset of the bankruptcy estate.

Eleanor Ericson ("Mrs. Ericson") is a 78 year-old widow. She has two children— the Debtor, Martin Ericson, and a daughter, Jill Salley.

In 1997, Mrs. Ericson was living in Galva, Illinois. She did her banking at the Community State Bank of Galva where she maintained a checking account and a savings account. Jill's name was also on both accounts. In 2001, Mrs. Ericson moved to Belvidere, Illinois, and she moved her checking and savings accounts to the Belvidere National Bank. She testified that she put Jill's name on these accounts "[j]ust in case something happened to me so she could pay bills." The Debtor's name was never on one of her checking or savings accounts.

In 1997, Mrs. Ericson created two $5,000 certificates of deposit. One certificate of deposit was located at the Citizens Bank of Galva and was in her name and Jill's name. The certificate was subsequently moved to the Belvidere National Bank when Mrs. Ericson moved to Belvidere. The certificate of deposit at issue in this proceeding was located at the Community State Bank of Galva and was payable to "Eleanor E. Ericson and/or Martin Ericson". Mrs. Ericson testified that she created the certificate of deposit because she "had the money" and she "wanted to put Jill on one and Martin on the other one." The certificate of deposit with the Debtor's name on it was created on March 10, 1997, and it was renewed annually until 2003. No money was ever taken out of the account in this period.

Mrs. Ericson has given her power of attorney to Jill Salley. She has never given her power of attorney to the Debtor.

In 2001, the Debtor borrowed $2,550 from the Community Bank of Galva to pay some bills. Mrs. Ericson co-signed the loan. In addition, she pledged the certificate of deposit with the Debtor's name on it as collateral for the loan. The loan had a maturity date of August 9, 2003.

On November 13, 2002, the Debtor filed a petition pursuant to Chapter 7 of the Bankruptcy Code. The Community State Bank of Galva filed a claim in the amount of $693.44 and asserted that it was secured by the certificate of deposit. This claim was the first that the Chapter 7 Trustee had heard of the certificate of deposit because the Debtor had failed to schedule it. The Trustee sent a letter to the Bank's attorney on June 3, 2003, requesting information about the certificate of deposit. The Bank's response to this letter was to pay off the Debtor's loan to the Bank and forward the balance of $6,013.84 to Mrs. Ericson. The loan was not scheduled to mature until August, 2003, and the certificate of deposit was not scheduled to mature until March, 2004, when the Bank took its actions on June 5, 2003. Mrs. Ericson testified that the certificate of deposit was cashed out in June, 2003, because the Debtor needed the money to pay his real estate taxes.

The Trustee has filed an adversary complaint pursuant to 11 U.S.C. § 542 seeking the turnover of the funds that were in the certificate of deposit. The Defendants—the Debtors, Martin and Barbara Ericson, Eleanor Ericson, and Community State Bank of Galva—object to the requested turnover. They assert that the certificate of deposit was not an asset of the bankruptcy estate because it was an account of convenience. They further assert that the certificate of deposit was not a joint account because it did not contain the magic words "as joint tenants".

█ The Illinois Joint Tenancy Act provides in pertinent part as follows:

§ 2. Except as to executors and trustees, and except also where by will or other instrument in writing expressing an intention to create a joint tenancy in personal property with the right of survivorship, the right or incident of survivorship as between joint tenants or owners of personal property is hereby abolished, and all such joint tenancies or ownerships shall, to all intents and purposes, be deemed tenancies in common. However, the foregoing shall not be deemed to impair or affect the rights, privileges and immunities set forth in the following paragraphs (a), (b) [and] (c) . . .

(a) When a deposit in any bank or trust company transacting business in this State has been made or shall hereafter be made in the names of 2 or more persons payable to them when the account is opened or thereafter, the deposit or any part thereof or any interest or dividend thereon may be paid to any one of those persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all those persons at the time the account is opened or thereafter the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made.

(b) When shares of stock, bonds or other evidences of indebtedness or of interest are or have been issued or registered by any corporation, association or other entity in the names of 2 or more persons as joint tenants with the right of survivorship, the corporation, association or other entity and their respective transfer agents may, upon the death of any one of the registered owners, transfer those

shares of stock, bonds, or other evidences of indebtedness or of interest to or upon the order of the survivor or survivors of the registered owners, without inquiry into the existence, validity or effect of any will or other instrument in writing or the right of the survivor or survivors to receive the property, and without liability to any other person who might claim an interest in or a right to receive all or a portion of the property so transferred.

(c) When shares of stock, bonds or other evidences of indebtedness or of interest are or have been issued in the joint names of 2 or more persons or their survivors by corporations, including state chartered savings and loan associations, federal savings and loan associations, and state and federal credit unions, authorized to do business in this State, all payments on account thereof made them or thereafter, redemption, repurchase or withdrawal value or price, accumulations thereon, credits to, profits, dividends or other rights thereon or accruing thereto may be paid or delivered in whole or in part to any of those persons whether the other person or persons be living or not, and when an agreement permitting such payment or delivery is signed by all those persons at the time when the shares of stock, bonds or evidences of indebtedness or of interest were issued or thereafter, the payment or delivery to any such person, or a receipt or acquittance signed by any such person, to whom any such payment or any such delivery of right is made, shall be a valid and sufficient release and discharge of any such corporation for the payment or delivery so made.

765 ILCS 1005/2.

■ Under Illinois law, a certificate of deposit is considered to be "other evidence of indebtedness" as noted in the Joint Tenancy Act. *In re Estate of White*, 56 Ill.2d 265, 307 N.E.2d 122 (1974). In this case, the joint tenancy was not established because the certificate of deposit did not include joint tenancy language. In addition, a Bank officer testified that the Bank did not consider the certificate of deposit to be a joint tenancy account because the Debtor did not sign it and the certificate did not list the Debtor and his mother as joint tenants. The Joint Tenancy Act required more compliance than was shown by the Trustee. *In re Estate of Poliquin*, 247 Ill.App.3d 112, 115, 186 Ill.Dec. 801, 617 N.E.2d 40, 42 (1993).

■ The evidence did not establish that Mrs. Ericson intended to make a gift of the certificate of deposit to the Debtor. In order to establish a valid *inter vivos* gift, there must be donative intent, acceptance, and delivery. *In re Estate of Stahl*, 13 Ill.App.3d 680, 301 N.E.2d 82 (1973). None of these elements were shown in this case. Mrs. Ericson did not deliver the certificate to the Debtor, and the Debtor testified that he was not even aware that his name was on the certificate.

■ Because there was insufficient compliance with the Joint Tenancy Act and the evidence did not establish a gift, the Court finds that Mrs. Ericson and the Debtor held the certificate of deposit as tenants in common. *Poliquin, supra*, 247 Ill.App.3d at 116, 186 Ill.Dec. 801, 617 N.E.2d at 44. The Debtor's undivided one-half interest in the certificate of deposit became property of the bankruptcy estate upon the filing of the bankruptcy petition. *In re Roberge*, 181 B.R. 854, 858 (Bankr.E.D.Va.1995); *In re Lambert*, 34 B.R. 41, 43 (Bankr.D.Col.1983).

■ Mrs. Ericson argues that the certificate of deposit was an account of

 

convenience. The evidence did not support this characterization:

> A convenience account is an account, apparently held in some form of joint tenancy, where in fact the creator did not intend the other tenant to have any interest, present or future, but had some other intent in creating the account. An example of a convenience account is an account where the creator only wanted the other tenant to write checks at the creator's direction, and not to have any share in the account during the creator's life or on the creator's death.

*In re Estate of Teall,* 329 Ill.App.3d 83, 87, 263 Ill.Dec. 364, 768 N.E.2d 124, 129 (2002), *quoting In re Estate of Harms,* 236 Ill.App.3d 630, 634, 177 Ill.Dec. 256, 603 N.E.2d 37 (1992).

Mrs. Ericson knew how to create a convenience account, and she did so in favor of her daughter and the Debtor's sister, Jill Salley. She chose Jill because she was the oldest, she lived closer to Jill, and she did not consider the Debtor to be financially responsible. She put Jill's name on her checking and savings accounts so that Jill could pay her bills. The Debtor's name was never on the checking or savings accounts. In addition, Mrs. Ericson gave her power of attorney to Jill, not to the Debtor. Moreover, a certificate deposit is not the type of account that is generally used as a convenience account for the payment of bills. Mrs. Ericson never intended for the Debtor to use the certificate of deposit as a convenience account.

For the foregoing reasons, the Court finds that the bankruptcy estate has a tenancy in common interest in the certificate of deposit. Therefore the Trustee is entitled to the turnover of one-half ($3,006.92) of the certificate of deposit.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.